Theodore F. FREEMAN and Samuel Manaster, as stockholders for Alleghany Corporation, on behalf of themselves and all other stockholders of Alleghany Corporation similarly situated, Plaintiffs,

v.

Allan P. KIRBY, Randolph Phillips, Charles T. Ireland, Jr., and Alleghany Corporation, Defendants.

United States District Court
S. D. New York.
April 6, 1961.

Corbin, Bennett & Delehanty, New York City, for plaintiffs; Harold H. Corbin, Francis B. Delehanty, Jr., New York City, of counsel.

Kissam & Halpin, New York City, for defendants, Charles T. Ireland, Jr. and

Alleghany Corp.; Leo T. Kissam, Anthony S. Genovese, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Allan P. Kirby; Roy W. McDonald, Robert V. Dunn, New York City, of counsel.

Randolph Phillips, defendant, pro se.

BICKS, District Judge.

This is a motion to strike the complaint as sham within the meaning and intent of Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The complaint alleges, in essence, that in 1954 and 1955 a series of suits by stockholders of Alleghany Corporation, later consolidated under the captions Breswick & Co. et al. v. Briggs et al. and Zenn et al. v. Anzalone et al., were brought in this Court and in the New York State Supreme Court respectively, that one Randolph Phillips acted as a consultant to one or more of the plaintiffs in the Zenn and Breswick actions, that Phillips also served as chairman of a stockholders group which included plaintiffs in said actions, and that by the fall of 1959 he was in control of the Breswick litigation. The complaint alleges further that Kirby, Phillips, Ireland and others allegedly entered into a secret agreement, concealed from the court and from other interested persons, by the terms of which Phillips agreed to withdraw his opposition to a settlement of the then pending actions on terms allegedly favorable to Kirby. Kirby allegedly agreed (a) to pay to Alleghany $1,100,000 in addition to the aggregate of the amounts theretofore offered by the defendants, (b) to cause Phillips and Ireland to be elected to the Board of Directors of Investors Diversified Services, Inc. (I.D.S.), (c) to appoint Phillips as a consultant to I.D.S. at a substantial salary, (d) to give Phillips a substantial voice in the management of I.D.S. and Alleghany, and (e) to cause Alleghany either not to oppose or to make only token opposition to any application for compensation Phillips and counsel for the plaintiffs might make in the Zenn and Breswick actions for their services therein. The Breswick and Zenn litigations were ultimately settled. While in his suit only Kirby, Ireland and Phillips are named defendants, in the suits which were settled, the defendants included, among others, Clint W. Murchison, Sr., Clint W. Murchison, Jr., John D. Murchison, Sidney W. Richardson and Robert R. Young. The relief sought here is a vacatur of the settlement as to Kirby only.

Rule 11 provides, in pertinent part, as follows:

"The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false * * *."

The critical questions, therefore, are (i) what is the purpose of Rule 11, and (ii) did the attorney, Jesse Holland, Esq., when he signed the complaint, to the best of his knowledge, information and belief, have good ground to support it.

It is clear that the motion to strike does not test the legal sufficiency of the claim stated, but rather, whether the attorney who signed the pleading met the standards delineated in the rule. Bates v. Clark, 1877, 95 U.S. 204, 206, 24 L.Ed. 471; Reynolds Metals Co. v. Metals Disintegrating Co., Inc., 3 Cir., 1949, 176 F.2d 90; Great Australian Gold Mining Co. v. Martin, L.R., 5 Ch. Div. 1, 11, 12 (1877).

The Note of the Advisory Committee on Rules for Civil Procedure does not elaborate upon the rule's purpose, but

cites Great Australian Gold Mining Co. v. Martin, supra. That case, dealing with service upon a foreign defendant, required as a prerequisite to such service, an affidavit of the solicitor that he "has every reason to believe" that the plaintiff would prevail, following the practice in the Court of Chancery where "[t]he signature of counsel to the bill was to that extent a voucher that the case was not a mere fiction." Great Australian Gold Mining Co. v. Martin, supra at pp. 10, 11.

■ Plaintiff urges that Rule 11 interdicts the filing of a pleading known to be false, and no more. Such a narrow construction of the rule finds no support either in the rule itself, the Advisory Committee Note, or decisional law.[1] In the language of the rule, "The signature of an attorney constitutes a certificate by him * * * that to the best of his knowledge, information, and belief there is good ground to support [the pleading] * * * *". An affirmative obligation is thus cast upon the attorney signatory to a pleading that he be satisfied, in good faith, that there is good ground to support the claim asserted therein. See Rosen v. Texas Company, D.C.S.D.N.Y.1958, 161 F.Supp. 55, 57. Viewing this case in the perspective of the events preceding the affixation by Holland of his signature to the complaint, it cannot be gainsaid that his certificate and the circumstances under which he made it do violence to the purpose of the rule.

On or about August 15, 1960 Holland indicated that he wanted to bring this lawsuit. The next day, Holman Jenkens, who has been described as the principal legal advisor to the Murchison interests, was informed of Holland's interest and purpose. Jenkens had previously retained the firm of Townley, Updike, Carter & Rodgers to represent the Murchisons for the purpose of instituting a suit based upon the same generative facts and for the same relief as the instant suit, and was anxious to learn whether Holland, with whom he had had prior professional relations, had any information which he did not have. At a meeting between Holland and Jenkens that evening it developed that not only did Holland not know more than Jenkens but that his information was limited to matters of public record. The next day Jenkens again met with Holland and delivered to him two memoranda, one dated August 2, 1960, prepared by Mr. Francis W. H. Adams, Esq., a member of the New York law firm of Satterlee, Warfield & Stephens, and the other dated August 7, 1960, prepared by Mr. Holman Jenkens. Said memoranda relate generally to the subject matter of this litigation. Holland refers to them as well as to a draft of the complaint in the suit now pending in this court entitled Murchison et al. v. Kirby et al., dated September 1, 1960, as the sole source of his knowledge and grounds of his belief to support the allegations of the complaint. Said memoranda and the printer's proof of the Murchison complaint were submitted to the Court for inspection *in camera* and have been marked as Court's Exhibit 1.

Holland testified that in July 1960 he had talked with Norman Mesirow, a Chicago stock broker who had been a client of his for many years, and stated that he was "cognizant that there was something wrong in the Alleghany-I.D.S. situation". To this observation Mesirow replied that he had customers who owned Alleghany stock. In August, after Jenkens had delivered the two memoranda which constitute part of Court's Exhibit 1 to Holland the latter again communicated with Mesirow, "reported [his] in-

1. Murchison v. Kirby, D.C., 27 F.R.D. 14 decided by my distinguished Brother Weinfeld on January 30, 1961, is inapposite and clearly distinguishable on the facts.

formation to him" and said, "This needs correction". Mesirow suggested that if Holland was "willing to undertake it, I have customers who will act as plaintiffs", and shortly thereafter informed Holland that a Mr. Herman Klafter had authorized him to go ahead with the case.

On September 1 Holland telephoned Jenkens and advised him that he was going to start this lawsuit. Jenkens referred Holland to Adams, and asked Adams to provide Holland with whatever assistance he could in connection with the complaint, including stenographic service. The following day, Holland met Adams in the latter's office and was presented with a proposed complaint in which Klafter was named plaintiff and Holland was designated as the attorney.

At the end of August, Mesirow informed Holland that Klafter had declined to continue to lend his name to the litigation and that Theodore F. Freeman and Samuel Manaster, also his customers, had agreed to act in that capacity. Manaster has since withdrawn from the part in this litigation which he had undertaken to perform. Freeman had agreed, at Mesirow's request, to "lend [his] name" to this lawsuit. At the time the complaint was filed neither Freeman nor Manaster knew anything about the matters upon which it is based, and had neither met Holland nor read the complaint.

Freeman has no agreement to compensate Holland for his services or to reimburse him for his out-of-pocket disbursements. Indeed the contrary seems to be the fact: Holland paid Freeman's hotel and travel expenses in connection with his trip to New York to be deposed, and Freeman contemplates the prospect of being paid by Holland for his time. Holland testified that his dis-

bursements to date total approximately $12,000 and that he expects to be reimbursed and compensated by the plaintiffs in a companion suit, Murchison et al. v. Kirby et al., Civ. No. 60–3511, filed in this Court on the same day as was the instant suit.

The complaint in this action, filed by Holland on September 8, 1960, is substantially the same as the "Klafter" complaint prepared by Adams and the first count in the "Murchison" draft complaint used as a "guide" by Holland.

Although Townley, Updike, Carter & Rodgers had possession of the August 2 and August 7 memoranda in which Holland reposed such great faith it was not until September 7, that they had " * * * what we thought was evidence sufficient to satisfy ourselves that this fraud had been committed, as distinguished from rumors and hearsay and things which we did not feel sufficiently reliable."[2] The additional information which came to the attention of Townley, Updike, on or post September 7, allegedly sufficient to satisfy them that the alleged fraud had been committed, has not been made to appear. Neither is there any proof in the record that such post September 7th information was communicated to Holland. Mr. Hindman's characterization of Court's Exhibit 1 conforms to the views of the Court. Court's Exhibit 1 was not made available to defendants' counsel and we are thus without the benefit of their observations thereon. However, the documents speak for themselves.

It is apparent that Holland, in his eagerness to be of service, expressed a desire to bring this suit even before he had received Court's Exhibit 1, the alleged source of his grounds to support the allegations of the complaint. He apparently felt so offended that he instituted suit in the names of persons

2. Statement of William P. Hindman, Jr. of Townley, Updike, Carter & Rodgers. P. 95, Transcript of Argument before Judge Bicks, November 15, 1960.

whom he had not previously met and allegedly expended approximately $12,-000 in disbursements without any definitive agreement with his client to be made whole. He neither knew who had authored the memoranda nor inquired into the truth of the allegations therein nor as to the matters stated therein to be further developed.

If an attorney's signature to a pleading is to be more than a hollow gesture he must do more than obtain a person willing to lend his name as a plaintiff; especially so where, as here, the complacent plaintiff is without knowledge, is content to act that role without reading the complaint, and expects to be paid for his time. An attorney's certification under such circumstances runs flagrantly afoul of the purpose of the rule.[3]

Citing Koster v. (American) Lumbermens Mutual Casualty Co., 1947, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067, plaintiff urges in his brief that in a stockholders derivative suit, the complainant is often a "phantom plaintiff" and that there is nothing wrong in this practice. Sufficient that a reading of the opinion will demonstrate plaintiff's error.

The motion to strike the complaint is granted.

So ordered.

---

3. "Rule 11 deals with signing of pleadings. Here we follow the equity rule that the signature of the lawyer, *carrying with it certain responsibilities, is much more important and worth while than an oath or verification attached to the complaint.* It is really an easy way of evading responsibility to draw a formal sounding document with long legal allegations and then get your client * * * to swear that they are all true. Then everybody has fulfilled his or her obligation. But after all, it doesn't amount to anything. In general the oath has been more defiled than honored by applying it to a situation of that kind. So here, instead of taking this course,

we say that *the lawyer is held to these certain obligations* when he signs a pleading: 'The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.' Then certain penalties are stated, including disciplinary action against the attorney for violation of the rule." (Emphasis supplied.) Judge Charles E. Clark, then Dean of Yale Law School, at the Proceedings of the Institute on the Federal Rules of Civil Procedure at Washington, D.C. (1938) p. 52.