**Effie SIMPSON, Appellant,**

v.

**CHESAPEAKE & POTOMAC
TELEPHONE COMPANY,
INC., et al., Appellees.**

**No. 85–394.**

District of Columbia Court of Appeals.

Submitted Dec. 16, 1985.
Decided March 18, 1987.

Altomease R. Kennedy, Washington, D.C., was on the brief for appellant.

Vincent H. Cohen, Robert B. Cave, and David F. Grady, Washington, D.C., were on the brief for appellee, Chesapeake & Potomac Telephone Co., Inc.

James R. Michal and Benjamin W. Dulany, Washington, D.C., were on the brief for appellee, AT & T Technologies, Inc.

Before BELSON and ROGERS, Associate Judges, and PAIR, Senior Judge.

BELSON, Associate Judge:

Appellant Effie Simpson appeals from the dismissal of her suit against Chesapeake and Potomac Telephone Company (C & P) and AT & T Technologies, Inc. (AT & TT). We affirm the trial court's finding that appellant's complaint was filed in violation of former Super.Ct.Civ.R. 11[1] and the trial court's imposition of the sanction of dismissal of the action as to C & P, but reverse the dismissal of the action as to AT & TT and remand for further proceedings.

I.

Simpson worked as a switchboard operator for the General Services Administration (GSA). She alleges that on April 17, 1981, while she was working at a switchboard designed and manufactured by AT & TT's predecessor, Western Electric, and installed and tested by C & P, she sustained an injury to the ear caused by an "electric shock to the head associated with a loud noise."

Simpson filed a claim for workers' compensation benefits on the day she allegedly was injured. GSA controverted her claim,

---

**1.** Super.Ct.Civ.R. 11 was amended in 1985. This case arises under former Rule 11. *See infra* at 883–84 n. 3.

noting that she had claimed to have sustained a similar injury in 1980, but that the problem was subsequently diagnosed as temporomandibular joint syndrome, and was not work-related. The Workers' Compensation Claims Examiner evaluated her claim arising out of the April 17, 1981, occurrence, and concluded that her claimed injury also was not work-related. In January 1984, the Office of Workers' Compensation Programs formally rejected her claim, finding that the weight of medical evidence established "that the claimant's hearing condition is not causally related to the alleged employment incident on April 17, 1981."

In February 1984, Simpson filed suit against AT & TT and C & P. She alleged that she was injured on the job, that her injury was caused by AT & TT's failure to design and manufacture the telephone equipment in such a manner as "to insure for safe operation" by its users, that AT & TT breached an implied warranty of fitness for particular use, that AT & TT had negligently failed to test and warn users of potential dangers, and that C & P had negligently assembled, inspected, and tested the equipment.

Shortly after receiving notice of the suit, C & P served interrogatories on Simpson. The interrogatories included questions asking Simpson to identify the legal and factual bases for her assertion that the shock was proximately caused by AT & TT's negligent failure to design the equipment to operate in a safe manner, that AT & TT had breached its duty of care, and that C & P had breached its duty of care. C & P also asked Simpson to identify each person she intended to call as an expert witness and to provide a summary of each expert's expected testimony.

Simpson responded promptly to C & P's interrogatories. Regarding the questions concerning the legal and factual bases for her assertions that C & P and AT & TT had breached their duty of care, she simply responded, "Answer will be supplied as discovery continues." Regarding the question asking the identity of experts Simpson expected to call at trial, Simpson responded, "Unknown at this time." On the same day she responded to C & P's interrogatories, Simpson propounded her own set of interrogatories to C & P, and two weeks later served interrogatories on AT & TT.

C & P's counsel wrote to Simpson's counsel after receiving the responses to its interrogatories, telling counsel they were dissatisfied with Simpson's responses and asking her to supplement them. Simpson's counsel responded that because much of the information regarding the case was in the defendants' hands, it was necessary for her to await the defendants' responses to her interrogatories before she would be in a position to supplement her answers.

On May 7, 1984, C & P filed a motion to strike the complaint under Super.Ct.Civ.R. 11 or, in the alternative, to compel the plaintiff, under Super.Ct.Civ.R. 37, to identify her expert witnesses and to state the bases of her allegations that AT & TT and C & P were negligent. On the same day C & P filed its motion, C & P also answered Simpson's interrogatories. Included in C & P's response was the technical information Simpson had requested.

Simpson promptly filed an opposition to C & P's motion, asserting that she was unable to state the legal and factual bases for her allegations because all of the technical information regarding the telephone equipment had been in the exclusive control of the defendants, and that she needed to review the defendants' responses to her interrogatories before she could provide additional information.

On May 24, 1984, the motions judge, without conducting a hearing, granted C & P's motion to strike the complaint under Rule 11. The court ordered that "C & P['s] ... Motion to Strike be ... GRANTED: and ... that the complaint filed ... is stricken and this action is DISMISSED WITHOUT PREJUDICE to its refiling when, and if, the plaintiff can provide the good grounds required by Rule 11 to support her allegations against C & P Telephone." (Emphasis in original.) Because the incident had occurred more than three years before the dismissal, any new com-

plaint filed by Simpson would have been vulnerable to the defense of limitations.

On June 11th, Simpson moved that the court reconsider its May 24th order. In her motion, she asserted that the facts set forth in her complaint established that she had good grounds for filing the action,[2] and that discovery should be available to uncover information to support the allegations in a complaint. Two weeks later, the trial court agreed to reconsider but, upon doing so, adhered to its May 24th order.

Shortly before the court reaffirmed its May 24th order, AT & TT responded to Simpson's interrogatories. AT & TT objected to Simpson's interrogatories on the grounds that they were overbroad, oppressive, and not calculated to lead to admissible evidence. AT & TT further asserted that it had no records regarding the type of equipment that was installed at the GSA.

Simpson did not file a motion to compel. Instead, she served amended interrogatories. AT & TT answered the amended interrogatories by stating that it did not have certain of the information requested, and that other requested technical information had already been given to Simpson's counsel in connection with another lawsuit. Once more, Simpson did not file a motion to compel.

AT & TT then moved to dismiss Simpson's complaint on the grounds (1) that the law of the case doctrine required dismissal because the Rule 11 violation was the same as to both defendants, and (2) that Simpson was collaterally estopped by the rejection of her worker's compensation claim from asserting a causal relationship between an occurrence on the job and any alleged injury to her left ear. On November 13, 1984, Simpson filed an opposition to AT & TT's motion, stating that she "now" had good grounds for bringing her action, in that an expert had examined the equipment on November 8th, and had opined that there was a "possibility" that she could have experienced an electric shock. The expert noted, however, that the "possibility" was based on his "cursory" examination of the equipment.

On November 15th, a different motions judge denied AT & TT's motion, holding that because the first judge had struck the complaint, the entire case was moot, *i.e.*, the complaint already stood dismissed as to AT & TT. The court did not reach the merits of the motion. This appeal followed.

II.

On appeal, Simpson urges this court to find that the first motions judge abused his discretion in granting C & P's motion to strike, and that the second judge erred in concluding that the case was moot, *i.e.*, dismissed, as to AT & TT. Simpson cites a number of cases under Super.Ct.Civ.R. 37 that state that dismissal for failure to make discovery is an extreme sanction that runs counter to the accepted judicial preference for a decision on the merits. *E.g., Grier v. Rowland,* 409 A.2d 205, 206 n. 1 (D.C.1979) (per curiam); *Koppal v. Travelers Indemnity Co. of Hartford, Connecticut,* 297 A.2d 337, 339 (D.C.1972). It is true that the precedents cited express a preference for decision on the merits. We point out, however, that the first motions judge granted C & P's motion to dismiss based on Rule 11's requirement that the plaintiff have good grounds to support her complaint, and not as a sanction under Rule 37 for failing to comply with discovery requests. We therefore look to the Rule 11 case law for guidance.

Super.Ct.Civ.R. 11, at the time pertinent to this litigation, provided, in part:

> The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is

---

2. Appellant's assertion can be viewed as raising a *res ipsa loquitur* theory. For that doctrine to apply, however, the instrumentality must be within the exclusive or joint control of the defendant. *E.g., Bell v. Westinghouse Electric Corp.,* 483 A.2d 324, 329 (D.C.1984). Here, the telephone system was not within the exclusive control of the defendant C & P or within the joint control of C & P and another entity, but rather was within the exclusive control of the General Services Administration.

not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this Rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a willful violation of this Rule an attorney may be subjected to appropriate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.[3]

Before filing a civil action, an attorney has a duty under Rule 11 to make an investigation to ascertain that the claim has merit, and further to ascertain that the damages sought bear a reasonable relation to injuries actually sustained. *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) (per curiam); *see also Miller v. Schweickart*, 413 F.Supp. 1059, 1061 (S.D. N.Y.1976) (lawyers have responsibility before subscribing their names to complaints to ascertain that reasonable basis exists for allegations, even if made on information and belief).[4] Rule 11 is a useful tool to restrain frivolous litigation. It is not, however, a substitute for a summary judgment motion, 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1334 at 503 (1969), and should not be used to harass the serious litigant whose claim may depend on circumstantial evidence that is not fully developed at the time the complaint is filed, *Anderson v. Cryovac*, 96 F.R.D. 431, 431 (D.Mass.1983). A plaintiff, nonetheless, is not permitted to file a suit in the mere hope that pretrial discovery will provide a basis for his case. *See id.*

Here, we note that Simpson had almost three years from the time of the alleged incident to the time she filed suit in which to investigate the causes of the alleged accident. Given that the Office of Workers' Compensation had found that her injury was not work-related, Simpson was under a heightened responsibility to investigate the circumstances of her accident to ensure that she had a basis for bringing suit.

That she failed to make such an investigation is apparent from her responses to C & P's interrogatories. First, when asked to provide the legal and factual bases for her claim that C & P and AT & TT breached the duty of care owed her, Simpson simply responded, "Answer will be supplied as discovery continues." That answer is strong circumstantial evidence that at the time the complaint was filed, Simpson did not have good grounds for stating that either C & P or AT & TT was negligent. If the complaint had been based on any information uncovered during a pre-filing investigation, Simpson should have revealed that information in her answers, to C & P's interrogatories.

Second, the fact that Simpson was unable to identify any experts who would testify in her behalf by the time C & P filed its interrogatories also suggests that Simpson had failed to ascertain a basis for her claim. To establish negligence in a

---

3. Super.Ct.Civ.R. 11 (1984). This rule was amended in 1985. The amendments made Super.Ct.Civ.R. 11 virtually identical to Fed.R. Civ.P. 11, which was similarly amended in 1983. The current rule provides that the attorney's signature certifies "to the best of [the attorney's] knowledge, information and belief *formed after reasonable inquiry* [that the complaint] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law...." (Emphasis added.) Super.Ct.Civ.R. 11. The comments to the 1983 Federal Rules amendments noted that the new language stressing the need for pre-filing inquiry makes the standard more stringent than the pre–1983 good faith formula and "it is expected that a greater range of circumstances will trigger its violation." Fed. R.Civ.P. 11 advisory committee note.

The 1985 amendments also deleted that portion of the rule authorizing the court to strike a pleading as sham and false, substituting the following language: "[T]he Court, upon motion or upon its own initiative, shall impose upon the person who signed [a pleading in violation of the rule], a represented party, or both, an appropriate sanction, *which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.*" (Emphasis added.)

4. Decisions interpreting analogous federal rules provide guidance to the court in interpreting our local rules. *See Beckwith v. Beckwith*, 379 A.2d 955, 959 n. 5 (D.C.1977), *cert. denied*, 436 U.S. 907, 98 S.Ct. 2239, 56 L.Ed.2d 405 (1978).

case such as this would have required expert testimony to establish the applicable standard of care and defendants' breach of that standard. *See Eibl v. Kogan,* 494 A.2d 640, 642 (D.C.1985) (per curiam) (affirming grant of summary judgment for failure to identify necessary expert); *Westinghouse Electric Corp. v. Nutt,* 407 A.2d 606, 611–12 (D.C.1979) (affirming grant of directed verdict for failure to introduce necessary expert testimony); *Anderson v. Cryovac, supra,* 96 F.R.D. at 432 (expert statement as to likelihood of causation sufficient to survive Rule 11 motion). Given the circumstances of this case, Simpson could not reasonably have believed that C & P or AT & TT had breached an applicable standard of care without expert advice to that effect.

So far as the record shows, it was not until November 8, 1984, well over three years after the alleged incident, that Simpson secured the opinion of an expert as to whether the equipment was capable of producing the type of electrical shock that she claimed injured her. We note that Simpson's expert opined only that there was a "possibility" that Simpson could have experienced an electrical shock while using the equipment, and that his analysis was based only on a "cursory" examination of the equipment.

Furthermore, although Simpson has contended, both in the trial court and in this court, that she was unable to state the legal and factual bases for her complaint until she received responses to her interrogatories to the defendants, Simpson has never explained how the information obtained showed, or could have shown, that she had had adequate grounds under former Rule 11 for bringing the action.

On this record, we cannot say that the first motions judge erred in finding a Rule 11 violation. *Cf. Anderson v. Cryovac, supra,* 96 F.R.D. at 432 (court found plaintiffs had good grounds for bringing suit when, in response to defendant's Rule 11 motion, plaintiffs gave details of research and factual investigation that preceded filing; plaintiffs had also retained expert who

concluded that it was *likely* that defendant had caused injury).

### III.

We next consider whether the first motions judge abused his discretion when he granted C & P's request for dismissal as a sanction. With respect to a sanction of this nature, the rule in effect at the time stated: "If a pleading ... is signed with intent to defeat the purpose of this Rule, it may be stricken as a sham and false...." Super. Ct.Civ.R. 11 (1984) (amended 1985). The language of the rule therefore provided the trial court with discretion to strike a pleading if it was signed with the forbidden intent. While a decision on the merits is favored, we will reverse the trial court's decision to sanction a party by striking the complaint only if it can be shown that the trial court abused its discretion in doing so. *See Rhinehart v. Stauffer, supra,* 638 F.2d at 1171.

■ Here, we cannot say the trial court abused its discretion in granting C & P's motion to dismiss. It is apparent from the record that Simpson's attorney did not attempt prior to filing the complaint to determine whether there were good grounds for her client's allegations that C & P and AT & TT were negligent. Since Simpson's attorney did not complete the pre-filing inquiry required by Rule 11 but signed the pleadings anyway, the trial court's implicit finding in dismissing the complaint that the pleadings were filed in bad faith was not clearly erroneous.

We find that the trial court's choice of dismissal as an appropriate sanction for Simpson's Rule 11 violation was not an abuse of discretion. The trial court's options for sanctions to impose on Simpson once it found bad faith were rather limited since we disapproved the awarding of attorney's fees under former Rule 11 in *Larry M. Rosen & Associates v. Hurwitz,* 465 A.2d 1114, 1118 (D.C.1983). The current version of Rule 11, as amended, emphasizes monetary sanctions, see *supra* at 883–84 n. 3, and offers the trial court a wide variety of

sanctions that are both effective and less severe than dismissing the complaint.[5]

Although there is no case authority in this jurisdiction approving or disapproving dismissal of pleadings as a sanction for a bad faith Rule 11 violation, such a sanction has been approved in several cases under the former federal rule. For example, in *Rhinehart v. Stauffer, supra,* the Ninth Circuit affirmed a dismissal under the pre–1983 Fed.R.Civ.P. 11 (to which our former Rule 11 was identical) on the ground that plaintiff's lawyer did not know whether he had good grounds for the claim because he had never discussed the case with his client. 638 F.2d at 1171. In *Andre v. Merrill Lynch Ready Assets Trust,* 97 F.R.D. 699, 700 (S.D.N.Y.), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983), the trial court dismissed the claims as sham and imposed attorneys' fees against plaintiff when plaintiff and her attorneys knowingly reasserted claims previously found to be meritless by an appellate court. In another dismissal based on bad faith, *Freeman v. Kirby,* 27 F.R.D. 395, 397 (S.D.N.Y.1961), the attorney filed a complaint in which he based the allegations solely on the limited facts that were of public record. The court found that the attorney had not fulfilled his obligation to satisfy himself that the complaint had good ground to support it before affixing his signature to it, and struck the complaint as a sham. *Id.* at 398–99; *see also Ellingson v. Burlington Northern Inc.,* 653 F.2d 1327, 1329–30 (9th Cir.1981) (upholding striking of complaint on Rule 11 grounds when essential allegations of complaint found to be false); *Incomco v. Southern Bell Telephone & Telegraph Co.,* 558 F.2d 751, 753 (5th Cir.1977) (affirmed dismissal under Rule 11 when no good ground to support pleading).

Cases in which pleadings were dismissed as sham under former Rule 11 are not numerous; however, dismissals have occurred both when the attorney affirmatively had known that the allegations in the pleadings were unfounded and when the attorney had failed to ascertain whether they were supportable. Given the circumstances that supported the trial court's determination that appellant had violated Rule 11, the court's decision to strike the complaint was well within the range of acceptable sanctions under prior case law.

## IV.

Having said this, we still face the question whether the first motions judge dismissed Simpson's entire complaint, or only the claim for relief against C & P, which had brought the Rule 11 motion. Simpson contends that the second motions judge erred in ruling that the case against AT & TT was moot after the first judge had struck Simpson's complaint on C & P's motion. We agree.

■ C & P had moved that "the complaint" be stricken. The first motions judge ordered that "C & P['s] . . . Motion to Strike be . . . GRANTED" and further directed that the complaint be stricken and the action dismissed without prejudice "to its refiling when, and if, the plaintiff can provide the good grounds required by Rule 11 to support her allegations *against C & P Telephone.*" (Emphasis added.) Nowhere in the order did the judge explicitly indicate that the claims against AT & TT were also stricken. We interpret the wording of the first motions judge's order to strike the complaint as to C & P but to leave intact the complaint as to AT & TT.

Looking beyond the wording of the order, we find support for our interpretation of the first judge's action in the fact that Simpson had alleged three theories of liability—strict liability against AT & TT, implied warranty also against AT & TT, and negligence against both AT & TT and C & P. The C & P interrogatories asked Simpson to identify the legal and factual bases for the strict liability in tort and negligence claims against AT & TT and the negligence claim against C & P. They did not ask Simpson to identify the legal and factual basis for the implied warranty claim against AT & TT. This jurisdiction

5. The sanction was no less severe because Simpson's complaint was dismissed without prejudice since a new complaint would have been barred by the statute of limitations.

recognizes negligence, strict liability, and warranty theories of product liability. *Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 719–21 (D.C.1985). Since C & P's interrogatories did not address the breach of warranty claim, it was never established formally at least that Simpson lacked good grounds for bringing the warranty claim against AT & TT. It is unlikely, therefore, that the court would have struck the entire complaint against AT & TT when a portion of it had never been challenged. These circumstances fortify our conclusion that the first judge's order, as worded, struck the complaint only as to C & P. Therefore, the second motions judge erred in finding the case to be moot.

AT & TT argues on appeal that even if the case is not moot, the "law of the case" doctrine required that the second motions judge strike those counts against it. We disagree. "The law of the case doctrine bars a trial court from reconsidering a question of law that was already decided in the same case by another court of coordinate jurisdiction." *Kaplan v. Pointer*, 501 A.2d 1269, 1270 (D.C.1985). Here, the law of the case doctrine, even if applicable, established only that Simpson violated Rule 11. Applying that doctrine, however, did not require that the *remedy* imposed by the first motions judge necessarily bound the second judge. *See Feaster v. Feaster*, 359 A.2d 272, 273 (D.C.1976) (subsequent judge obligated to exercise discretion with regard to current posture of case, and is not bound by original ruling denying any further continuances); *see also Johnson v. United States*, 398 A.2d 354, 363–64 (D.C. 1979) (discretionary ruling does not lead inevitably to only one result); *Rhinehart, supra,* 638 F.2d at 1171 (decision regarding sanction for Rule 11 violation entrusted to discretion of trial judge). Thus, it would be incorrect to say that because the first judge struck the complaint against C & P for the Rule 11 violation, the second judge was bound to strike the complaint against AT & TT for the same violation. Under the circumstances, we conclude that the second motions judge should have ruled on the merits of AT & TT's motion to dismiss and considered sanctions if appropriate.

The order striking the complaint against C & P is affirmed, the order denying AT & TT's motion to dismiss on the ground that the complaint already stood dismissed as to AT & TT is reversed, and this case is remanded for proceedings consistent with this opinion.

*So ordered.*