George MONTGOMERY, Appellant,

v.

JIMMY'S TIRE & AUTO CENTER, INC., Appellee.

No. 87–1365.

District of Columbia Court of Appeals.

Argued May 2, 1989.
Decided Sept. 29, 1989.

George Montgomery, pro se.

Shari L. Cohen, with whom Lorin H. Bleecker, was on the brief, for appellee.

Before NEWMAN and TERRY, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

The issue in this appeal is whether the trial court erred in imposing sanctions under Superior Court Rule 11 on appellant George Montgomery. Mr. Montgomery, an attorney, represented American Fleet Service, Inc. (AFS), Daniel Smith, the president of AFS, and Albert Smith, Daniel's son and an AFS employee, in a breach of contract action. Because we are unable to discern from the record whether or how the trial court exercised its considerable discretion, we remand the case for a hearing. We direct the court, on remand, to make findings of fact which support the conclusion that sanctions are required (if indeed

they are required). The court should also explain why it ordered sanctions in the amount that it did. We recognize that after holding a hearing, the court may conclude that the imposition of sanctions in this case is unwarranted, or that it may decide to alter the amount or type of sanctions it originally imposed in light of what we say in this opinion. If it so concludes or decides, it may enter an appropriate order.[1]

I

The underlying litigation in this case appears to have been a run-of-the-mill contract dispute. Appellee filed a complaint in the Superior Court alleging that AFS was indebted to it on a contract for goods and services. In an answer signed by Albert Smith, AFS's shop manager, and appellant Montgomery, AFS's attorney, AFS denied that it had contracted with appellee or was indebted to it. Thereafter appellee moved for summary judgment. The court granted appellee's motion, apparently in the belief that it was unopposed. Two weeks later, however, the order granting the motion was vacated. The parties had in fact agreed to extend AFS's time for filing a response to the motion, but, because of an error in the Clerk's Office, the consent praecipe reflecting that agreement had not been filed or docketed after the Clerk's Office received it.

AFS then filed an opposition, signed by Montgomery, to the motion for summary judgment. In this opposition AFS asserted that it had neither purchased nor received merchandise from appellee, and that the recipient of the goods and services was a separate and distinct entity, Eastern Cab Company, Inc. AFS also alleged that many of the items purchased by Eastern had proven to be defective and had been returned, but that no credits had been given to Eastern. Additionally, AFS submitted a schedule of assets and liabilities filed by Eastern in bankruptcy proceedings, which listed appellee as one of Eastern's creditors.

Ruling that appellee's motion for summary judgment was "not properly supported," and unable to conclude that no issues of fact remained for trial, Judge Weisberg denied the motion for summary judgment. Appellee then moved for reconsideration, and AFS filed an opposition signed by Montgomery and by Daniel Smith. After Judge Weisberg denied the motion for reconsideration, appellee served its first set of interrogatories on AFS, to which AFS filed answers signed by Daniel Smith.

Several weeks later Judge Mitchell, the pretrial judge, *sua sponte* ordered Mr. Montgomery to pay $100.00 to appellees' counsel as a sanction for failing to appear at a pretrial conference. That order was vacated, however, after Montgomery filed a motion to reconsider.

On the scheduled trial date, Montgomery requested a continuance on behalf of AFS on the ground that the two witnesses he intended to call, Albert and Daniel Smith, were unavailable to testify. Judge Rufus King, the Calendar Control judge, denied the motion. The case was then sent to Judge Salzman for trial, but he recused himself on Montgomery's motion. The case was reassigned to Judge Suda, but he too recused himself on Montgomery's motion. Finally, the case went back to Judge King for trial. Richard Colburn, appellee's president and chief executive officer, testified that appellee had provided goods and services to AFS. He also testified that invoices reflecting AFS's indebtedness to appellee had been signed by Albert Smith, and that AFS owed appellee $22,287.35.[2] AFS, because its witnesses did not appear for trial, put on no defense. The trial lasted less than an hour, and at the end of it Judge King entered judgment for appellee in the amount of $22,287.35, plus interest and costs. AFS did not appeal from the judgment.

---

1. AFS and the Smiths also noted an appeal from the award of sanctions, but while the appeal was pending, they settled their dispute with appellee, and their appeal (No. 87–1401) was voluntarily dismissed. AFS and the Smiths were not represented on appeal by appellant Montgomery.

2. These invoices were not included in the record on appeal.

After AFS's time for noting an appeal had passed, appellee filed a motion for Rule 11 sanctions against AFS, the Smiths, and Mr. Montgomery. All of them opposed the motion in writing.[3] Thereafter, without holding a hearing to determine whether sanctions were appropriate, and if so in what form and against whom, Judge Goodrich—who appears from the record to have had no previous contact with the case—granted appellee's motion for sanctions in the following three-paragraph order:

> This matter having come before the Court upon the Plaintiff's Motion for Sanctions and Memorandum of Points and Authorities in support thereof, and it appearing to the Court that reasonable inquiry has not been made into the factual grounds supporting Defendant's Answer, Opposition to Plaintiff's Motion for Summary Judgment, Opposition to Plaintiff's Motion to Reconsider and Answers to Interrogatories, it is by this Court this 4th day of November, 1987:
>
> ORDERED, that Plaintiff's Motion for Sanctions be, and the same is hereby GRANTED; and it is
>
> FURTHER ORDERED, that Plaintiff be awarded $7905.00, payable jointly and severally, by the Defendant, its officers Daniel Smith and Albert Smith, and Defendant's attorney, George Montgomery, this sum being the amount of reasonable attorney's fees incurred by Plaintiff as a result of Defendant's conduct herein. (See ¶ 24 of Plaintiff's motion for sanctions.)

No findings of fact or conclusions of law accompanied the order, nor was there any explanation of why the sanctions were levied against Mr. Montgomery and his clients jointly and severally.

## II

In 1985 Superior Court Civil Rule 11 was amended to track the language of the corresponding federal rule, Fed.R.Civ.P. 11, which was itself substantially amended in 1983. *See Simpson v. Chesapeake & Poto-* *mac Telephone Co.*, 522 A.2d 880, 884 n. 3 (D.C.1987). In pertinent part, the local rule provides:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

The corresponding portion of the federal rule contains precisely the same language. When a local rule and a federal rule are identical, or nearly so, we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent, and we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule. *Simpson, supra,* 522 A.2d at 884 n. 4; *Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 807 (D.C.1984); *Vale Properties, Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 13 n. 3 (D.C.1981). Therefore, most of the cases we cite in this opinion will be federal cases, since this court thus far has issued only two opinions dealing with the amended

---

**3.** Although it is not entirely clear from the record, appellee's motion for sanctions appears to have been based primarily on the Smiths' and Montgomery's alleged failure to undertake a reasonable inquiry into the facts supporting various papers which they had signed.

Rule 11, *Simpson v. Chesapeake & Potomac Telephone Co., supra*, and *Stansel v. American Security Bank*, 547 A.2d 990 (D.C.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989).

■ Under the amended Rule 11, "appropriate" sanctions are mandatory if a person signs and files a motion or other paper without making a reasonable pre-filing inquiry into the facts and law on which it is based, files it for an improper purpose, or, making an argument for a change in the law, fails to make that argument in good faith. *See, e.g., Westmoreland v. CBS, Inc.*, 248 U.S.App.D.C. 255, 261–262, 770 F.2d 1168, 1174–1175 (1985), adopted by this court in *Stansel v. American Security Bank, supra*, 547 A.2d at 995–996; *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *see also* 2A J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE ¶¶ 11.02[2]–[3] (2d ed. 1987 & Supp.1988–1989) (hereafter MOORE'S FEDERAL PRACTICE). As we said in *Stansel:*

> [T]he trial court has broad discretion, in the first instance, to determine whether there has been a violation of the rule by a party or by counsel. Once such a violation is found, however, the court *must* impose "an appropriate sanction" under the rule; it has no discretion to refrain from sanctioning an offending party or attorney.

547 A.2d at 995–996 (emphasis in original).

The trial court's order imposes a substantial monetary sanction—almost $8,000—on the ground "that reasonable inquiry has not been made into the factual grounds supporting Defendant's Answer, Opposition to Plaintiff's Motion for Summary Judgment, Opposition to Plaintiff's Motion to Reconsider and Answers to Interrogatories...." The order makes no mention of the "improper purpose" or "unsupported by law" prongs of Rule 11. In the third paragraph of the order, the court makes the sanction "payable jointly and severally" by AFS, its attorney Mr. Montgomery, and Daniel and Albert Smith. This paragraph

in turn cites paragraph 24 of appellee's motion for sanctions, which states:

> 24. That the foregoing clearly demonstrates that there had been *no reasonable inquiry* into the factual basis of Defendant's claims and *that there had been a consistent pattern of delay and obfuscation that has needlessly burdened this Court, abused the litigation process* and greatly added to Plaintiff's litigation costs while at the same time denying it of what was rightfully theirs. In all Plaintiff's counsel expended 49.5 hours at an hourly rate of $150.00 in attorneys' time and 80 hours at an hourly rate of $60.00 in order to pursue this claim. *Clearly, had Defendant and its officers and agents been candid or pursued its defenses in good faith*, this would not have been required. A copy of the bill is attached hereto and incorporated herein by reference as if repeated verbatim. [Emphasis added.]

In short, appellee claimed that Mr. Montgomery, AFS, and the Smiths had filed their papers both with an "improper purpose" and after insufficient factual inquiry. However, because the trial court's order referred only to a lack of factual inquiry as a basis for sanctions, one might conclude that the "improper purpose" and "unsupported by law" prongs of Rule 11 were not considered by the court. One might also conclude, on the other hand, that the court referred to paragraph 24 merely as a guide for determining the amount of the sanction.

Because the trial court entered its order without holding a hearing and without making factual findings, it is unclear whether the "improper purpose" prong of Rule 11 was a factor in its decision. For this and other reasons we must remand this case for further proceedings.

### A. *The Standard of Review and the Decision to Impose Sanctions*

■ A trial court decision to impose sanctions under Rule 11 is a two-step process. First, the court must determine whether there was a Rule 11 violation at all. If the court concludes that a violation occurred, "it has no discretion to refrain

from sanctioning an offending party or attorney,"[4] but it must then choose what sanction to impose. The courts are in agreement that the latter decision is subject to review for abuse of discretion. *E.g., Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1126 (5th Cir.1987); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986); *Westmoreland v. CBS, Inc., supra,* 248 U.S.App.D.C. at 262, 770 F.2d at 1175; *see* MOORE'S FEDERAL PRACTICE, *supra,* ¶ 11.02[4], at 11–27 & n. 8; Vairo, *Rule 11: A Critical Analysis,* 118 F.R.D. 189, 225 & n. 200 (1988). The several circuits do not agree on the standard by which they review the initial finding of a violation. *See* G. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE 307–310 (1989) (hereafter SANCTIONS). We said, however, in *Stansel v. American Security Bank, supra,* that we would interpret our local rule "in the same manner as the United States Court of Appeals [for the District of Columbia Circuit] read the corresponding federal rule in *Westmoreland v. CBS, Inc., [supra]*." 547 A.2d at 995 (footnote omitted). Following *Westmoreland,* we hold that the trial court's decision on whether a violation of the factual inquiry or improper purpose prongs of Rule 11 has occurred is subject to review for abuse of discretion, but a decision on whether a paper was supported by law or a good-faith argument for a change in the law is subject to *de novo* review because the issue is strictly one of law. *Westmoreland, supra,* 248 U.S.App.D.C. at 261–262, 770 F.2d at 1174–1175.[5]

Applying these standards to the case at bar, we conclude that we must remand the case for factual findings and, under the circumstances, a hearing. The record simply does not tell us whether the trial court recognized that it had any discretion and, if so, what it relied upon in deciding that sanctions were warranted. While the order does refer generally to responsive papers filed on behalf of AFS, it does not sufficiently state the basis for the court's conclusion that "reasonable inquiry has not been made" into the factual grounds for those papers. *See Stansel, supra,* 547 A.2d at 990.

It is far from clear that Mr. Montgomery failed to conduct the reasonable factual inquiry required by Rule 11. While it is true that Montgomery did not put on any evidence at trial to substantiate AFS's proffered defenses, it must be remembered that AFS's witnesses did not appear at trial because the court denied Mr. Montgomery's last-minute request for a continuance. It may well be that these witnesses would have given testimony to support AFS's answer. It is one thing to conclude that AFS lost at trial because it failed to prove its asserted defenses, but quite another to say that those defenses could not be supported by facts pleaded in AFS's papers which were signed by Mr. Montgomery. The trial court, before ordering sanctions, must find that there was no support for the factual assertions made by AFS through its counsel Montgomery. Under Rule 11, papers must not be viewed with 20/20 hindsight;

4. *Stansel, supra,* 547 A.2d at 996. The language of Rule 11 (if there is a violation, the court "shall impose ... an appropriate sanction") leaves no room for the court to refrain from sanctioning the violator. *Id.; accord, Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 876 (5th Cir.1988).

5. The First, Third, Fourth, Fifth, and Tenth Circuits apply an abuse of discretion standard in reviewing the decision to sanction. *Teamsters Local 430 v. Cement Express, Inc.,* 841 F.2d 66, 68 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988); *Thomas v. Capital Security Services, Inc., supra* note 4, 836 F.2d at 871–873 (citing cases and noting the circuit split); *EBI, Inc. v. Gator Industries, Inc.,* 807 F.2d 1, 6 (1st Cir.1986); *Cotner v. Hopkins,* 795 F.2d 900, 903 (10th Cir.1986); *Stevens v. Lawyers Mutual Liability Ins. Co.,* 789 F.2d 1056, 1060 (4th Cir.1986).

The Eleventh Circuit, like the District of Columbia Circuit in *Westmoreland,* applies an abuse of discretion standard to the factual support and improper purpose prongs, and a *de novo* standard to the legal basis prong. *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987).

The Eighth and Ninth Circuits apply a "clearly erroneous" standard to the factual prong and engage in *de novo* review on the legal basis prong. *See Kurkowski v. Volcker,* 819 F.2d 201, 203 n. 8 (8th Cir.1987); *Zaldivar v. City of Los Angeles, supra,* 780 F.2d at 828 & n. 4 (citing cases).

rather, the court must determine whether, *before they were filed,* an objectively reasonable factual inquiry was undertaken which supported the filing. "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed.R.Civ.P. 11, Advisory Committee Note, 97 F.R.D. 198, 199 (1982); *see, e.g., Thomas v. Capital Security Services, Inc., supra* note 4, 836 F.2d at 874–875.

That the trial court sanctioned Mr. Montgomery for, *inter alia,* AFS's opposition to appellee's motion for summary judgment is particularly troubling because Judge Weisberg had previously *denied* both the motion for summary judgment and appellee's subsequent motion to reconsider. Those denials at least suggest that Judge Weisberg may have agreed with the position advocated by Montgomery in the papers he signed. "For a trial judge to rule in favor of a party, the trial judge necessarily must conclude that the party's position is 'well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " *Indianapolis Colts v. Mayor & City Council of Baltimore,* 775 F.2d 177, 181 (7th Cir.1985), quoting Fed.R. Civ.P. 11. It may be that Judge Weisberg's denial of summary judgment, apparently agreeing (or at least not disagreeing) with Montgomery's papers, can be reconciled with Judge Goodrich's unexplained finding that those papers were sanctionable. Nevertheless, because Judge Weisberg ruled that summary judgment was unwarranted, we think that Judge Goodrich should at least explain why, in the exercise of his discretion, he concluded that the papers filed by Montgomery in opposition to the motion for summary judgment and in opposition to appellee's motion to reconsider warranted sanctions under Rule 11.

### B. *The Amount of Sanctions Imposed and the Joint and Several Apportionment*

■ Even if we were able to ascertain on this record that this was an appropriate case for sanctions, *i.e.,* that the trial court properly exercised its discretion in determining that sanctions were warranted, a remand would still be necessary because we cannot discern how the court exercised its discretion in determining which party to sanction for which paper. The purposes of Rule 11 are to discourage frivolous or dilatory litigation, to punish abusive litigants, and to compensate opposing parties whose expenses have been driven up or who have been otherwise prejudiced. *See Simpson, supra,* 522 A.2d at 884; SANCTIONS *supra* at 235–237; Advisory Committee Note, *supra,* 97 F.R.D. at 198–199. Accordingly, to fulfill the purpose of the rule, the trial court must specifically and precisely decide who should be sanctioned for a given paper, *i.e.,* the signer, the represented party, or both. *See* Nelken, *Sanctions under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle between Compensation and Punishment,* 74 GEO. L.J. 1313, 1329 (1986). On this record, absent any indication of the trial court's reasoning, it is impossible for us to determine whether or how the court exercised its discretion in assessing sanctions jointly and severally against Montgomery and his clients.

The amount of the sanction is also subject to question. Paragraph 24 of appellee's motion for sanctions, cited in the trial court's order, claimed that over the course of the entire litigation appellee's counsel "expended 49.5 hours at an hourly rate of $150.00 in attorneys' time and 80 hours at an hourly rate of $60.00 to pursue this claim." Counsel's fee thus amounted to $12,225.00. The trial court, however, awarded $7,905.00 in sanctions. Given these disparate figures and the lack of any explanation from the trial court as to how it calculated the sum of $7,905.00, we cannot meaningfully review the court's ruling. *See Williams v. Ray,* 563 A.2d 1077, 1080 (D.C.1989); SANCTIONS, *supra* at 301–302 (citing cases). *Compare Frazier v. Franklin Investment Co.,* 468 A.2d 1338, 1341–1342 (D.C.1983) (affirming fee award after trial court "fully considered counsel's extensive submissions, broke down the hours claimed, and considered what work was

necessary to perform and what was value-less").

### C. *The Necessity of a Hearing on Remand*

■ While Rule 11 procedures must comport with due process, a hearing is not required in every case. *E.g., Donaldson v. Clark, supra* note 5, 819 F.2d at 1558–1561 & n. 13 (citing cases); *see also* SANCTIONS, *supra* at 292–295, 298–299; MOORE'S FEDER-AL PRACTICE, *supra,* ¶ 11.02[4], at 11–26 & n. 4; *Vairo, supra,* 118 F.R.D. at 222–223. As the Advisory Committee Note states:

> The particular format to be followed should depend on the circumstances of the situation and the severity of the sanc-tion under consideration. In many situa-tions the judge's participation in the pro-ceedings provides him with full knowl-edge of the relevant facts and little fur-ther inquiry will be necessary.
>
> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record.

97 F.R.D. at 201; *accord, e.g., Donaldson v. Clark, supra* note 5, 819 F.2d at 1560–1561; *Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir.1986); *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *see also Thomas v. Capital Security Ser-vices, Inc., supra* note 4, 836 F.2d at 883.

Three factors necessitate a hearing in this case. First, the record suggests that at least one judge (Judge Weisberg) found some of Montgomery's papers sufficient, but that these same papers were later found by another judge (Judge Goodrich) to warrant sanctions. That inconsistency must be resolved and explained. Second, the amount of the sanction imposed in rela-tion to the amount in controversy was un-usually high, more than one-third of the judgment, which prompts a reviewing court at least to raise an eyebrow. Third, and most significantly, the judge who imposed the sanction neither tried the case nor con-sidered any other aspect of it; consequent-

ly, this is not a case in which "the judge's participation in the proceedings provide[d] him with full knowledge of the relevant facts," making further inquiry unneces-sary. Advisory Committee Note, *supra,* 97 F.R.D. at 201.[6] We suggest to the trial court that, in the future, any motion for Rule 11 sanctions be referred routinely to the judge who tried the case or otherwise rendered a decision on the merits (*e.g.,* by granting a motion for summary judgment). That judge is uniquely able to decide whether the motion calls for a hearing or whether it can be denied (or granted) on the spot. Had the motion in this case gone to Judge King instead of Judge Goodrich, we might not even have this appeal before us.

### III

■ Two additional arguments made by Montgomery call for only brief discussion. First, Montgomery claims that appellee's motion for sanctions should have been de-nied as untimely. This argument is with-out merit. Rule 11 does not include "any intrinsic time limitation." *Hicks v. South-ern Maryland Health Systems Agency,* 805 F.2d 1165, 1166 (4th Cir.1986). Mont-gomery's reliance by analogy on Superior Court Civil Rules 59(e) and 54(d) is mis-placed because each of those rules has a time limit embedded in the text of the rule. Besides, a Rule 11 motion has a different purpose from a motion to amend judgment or a motion for costs. *See White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 452–454, 102 S.Ct. 1162, 1166–1167, 71 L.Ed.2d 325 (1982) (holding that a motion for attorney's fees authorized by statute is not untimely when the nonmoving party is neither prejudiced nor unfairly surprised).

Second, the Advisory Committee Note to Fed.R.Civ.P. 11 states that while a party seeking Rule 11 sanctions should notify the court and the offending party "promptly upon discovering a basis for doing so," the timing of the sanctions is left to the discre-tion of the court. Thus "in the case of

---

**6.** At oral argument counsel for appellee was unsure whether Judge Goodrich had even had a

transcript of the trial before him.

pleadings the sanctions issue under Rule 11 normally will be determined at the *end* of litigation, and in the case of motions at the time when the motion is decided or shortly thereafter." 97 F.R.D. at 200–201 (emphasis added). We therefore hold that a motion for Rule 11 sanctions need only be made within a reasonable time after the moving party learns of the grounds for the motion. *See In re Ruben,* 825 F.2d 977, 981–982 (6th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); *Hicks v. Southern Maryland Health Systems Agency, supra,* 805 F.2d at 1167; *In re Itel Securities Litigation,* 791 F.2d 672, 675 (9th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987); *Gordon v. Heimann,* 715 F.2d 531, 537–539 (11th Cir.1983); SANCTIONS, *supra* at 280–285.[7]

### IV

We reverse the order imposing sanctions under Rule 11 and remand this case for further proceedings. On remand the trial court should hold a hearing to determine whether Montgomery failed to make an appropriate, objectively reasonable pre-filing inquiry into the facts underlying the papers on which the sanction was based. If the court concludes that sanctions are warranted, it should also identify on the record which papers signed by Montgomery violated the rule and in what respect. Further, if the court imposes a monetary sanction, it should state on the record how it calculates the amount of the sanction. On the other hand, if the court on remand concludes that sanctions are unwarranted, it should deny the Rule 11 motion.

*Reversed and remanded.*

---

7. Montgomery also contends that Judge Mitchell's order imposing sanctions is *res judicata* as to all sanctions issues presented in this case, or in the alternative that appellee was barred by that order from later moving for sanctions under collateral estoppel principles. These contentions are completely frivolous. First, Judge Mitchell's order was entered *sua sponte* and was later vacated. The issue of sanctions, particularly with respect to the factual basis for the

pleadings Montgomery filed, was thus never litigated. Second, there is nothing in the record indicating that the $100 sanction was imposed pursuant to Rule 11, so that it could not bar a later Rule 11 motion. Third, the sanction was assessed specifically for Montgomery's failure to appear, but that was not among the reasons given by Judge Goodrich in his subsequent order.