MOUNT JEZREEL CHRISTIANS
WITHOUT A HOME, et al.,
Appellants,

v.

BOARD OF TRUSTEES OF MOUNT
JEZREEL BAPTIST CHURCH, et
al., Appellees.

No. 89–143.

District of Columbia Court of Appeals.

Argued Feb. 7, 1990.
Decided Oct. 30, 1990.

Judith L. Walter, Washington, D.C., for appellants.

Darrel S. Parker, with whom Dovey J. Roundtree, Washington, D.C. was on the brief, for appellees.

Charles E. Williams filed a brief as amicus curiae.

Before NEWMAN, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

This is a complicated, emotional dispute between members of a church congregation and the governing board of the church. The sole issue before us, however, is whether the trial court was correct when it dismissed the plaintiffs' suit on the ground that they did not have standing to bring it. Because we hold that six of the named plaintiffs do indeed have standing and four others have at least a colorable claim to

standing, and because the status of one plaintiff cannot be determined on the present record, we reverse the dismissal and remand the case for further proceedings.

## I

Mount Jezreel Baptist Church was incorporated in 1883. The original certificate of incorporation stated that it was formed "for the purpose of religious worship ... at the church building on the southeast corner of Fifth Street and E Street, Southeast, in the City of Washington...." In August 1982, after the safety of the building allegedly became an issue, the pastor and the Board of Trustees decided to close the doors of the historic church building at Fifth and E Streets and move to a new location.[1]

Appellants are members or former members of the church congregation who claim that the trustees improperly managed the church's assets and business affairs. In the decade before the filing of this suit, relations between the church hierarchy and a segment of the congregation—of which appellants are a sub-group—became increasingly hostile, and a barrage of litigation followed.[2]

On July 20, 1984, calling themselves "Mount Jezreel Christians Without a Home," three members of the congregation filed this action against the trustees and Reverend Harold Trammell, the pastor, alleging violations of their fiduciary duty. An amended complaint included ten additional plaintiffs.[3] Appellants state in their brief that they "brought suit in an attempt to salvage the historic old Mount Jezreel church building and to challenge a series of *ultra vires* actions by the ... Board of Trustees ... and Rev. Harold Trammell ... with respect to the building and other property belonging to the congregation." Appellees filed a motion to dismiss the amended complaint, alleging that the named plaintiffs all lacked standing. The motion stated that "the so-called persons claiming to be Christians Without a Church Home [*sic*] are not members of Mount Jezreel Baptist Church. These persons were disfellowshipped by a due resolution on February 28, 1979."

After a hearing, the trial court granted the motion and dismissed the amended complaint with prejudice. It found as a fact:

That the Christians Without A ... Home claim to be members in good standing of Mt. Jezreel Baptist Church located at 501 E Street, Southeast. When asked at the hearing to identify themselves and church affiliation, they disavowed membership at Mt. Jezreel Baptist Church at 405 Riggs Road, Northeast. That the plaintiffs have clearly established that they have severed membership with Mt. Jezreel Baptist Church, 405 Riggs Road, Southeast [*sic*].

The court's conclusions of law contained the following:

1. That these persons herein, namely Mt. Jezreel [Christians Without A Home,] are not members in good standing of Mt. Jezreel Baptist Church and

---

1. After services were held in temporary quarters for several months, the trustees in July 1983 purchased a new building at 405 Riggs Road, N.E., for $700,000. The original church building was mortgaged in late 1986 for approximately $365,000 and eventually was sold on November 3, 1989, for $450,000.

2. Indeed, *amicus curiae* asserts that this court does not have jurisdiction over this appeal because the trial court's decision is not a final order. He bases this argument on the fact that there is a related claim still pending before the trial court in a separate case, *Charles E. Williams, et al. v. Board of Trustees of Mount Jezreel Baptist Church,* Civil Action No. 12510–82. We reject *amicus'* argument because the trial court's dismissal of this action was unquestionably a final order under D.C.Code § 11–721(a)(1) (1989).

3. The original complaint, filed July 20, 1984, named Emma Anderson, Pattie Anderson, and Mildred Colbert as plaintiffs. A motion for leave to amend the complaint was filed on September 28, 1984. The record does not reflect when this motion was granted, but the amended complaint was filed on April 7, 1986. It added ten more individual plaintiffs to the original three: Jennifer Colbert, Jane Emerson, Nannie Gilliam, Earnest Green, Kershaw Green, Jacqueline Harvey, Marcellus Herrod, Estelle Kirksey, Marion Stroud, and Ruth Truehart.

were not such at the time of the filing of their Complaint.

\*    \*    \*    \*    \*    \*

3. That these Plaintiffs, not being members in good standing of Mt. Jezreel Baptist Church at the time when they filed this cause of action, lack standing to prosecute this suit.

\*    \*    \*    \*    \*    \*

5. That Plaintiffs have no status as trust beneficiaries under the deed titled in the names of the trustees of the church.

## II

■ A threshold question in this case is whether members of a church can bring suit against the trustees or governors of their church on the theory that they are "trust beneficiaries." The trial court concluded that they could not, and held that "[p]laintiffs have no status as trust beneficiaries under the deed titled in the names of the trustees of the church." We disagree.

■ Mount Jezreel Baptist Church was incorporated in 1883 "for the purpose of religious worship and holding ... services at the church building on the southeast corner of Fifth Street and E Street, Southeast...." Although title to the church property is "vested in the trustees or directors," the property itself is held in trust "for the uses and purposes named and no other." D.C.Code § 29–908 (1981). Because the church was incorporated for the purpose of religious worship, and because the property was held in trust for that purpose, the members of the congregation are indeed the beneficiaries of the trust.[4] As such, they have standing to sue the trustees in the event that the trust property is used or disposed of in a manner contrary to the stated purposes of the trust. *See Hooker v. Edes Home,* 579 A.2d 608, 611–12 (D.C.1990), citing *YMCA v. Covington,* 484 A.2d 589, 591 (D.C.1984); *see also* RESTATEMENT (SECOND) OF TRUSTS § 391 (1959) ("A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest"). Furthermore, when the use or disposition of church property is disputed, the courts may be called upon to determine which faction of the congregation is entitled to the assets. *Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979) ("The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively"); *see Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969) (First Amendment "commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine"). We therefore hold that, as a general principle, bona fide members of a church have standing to bring suit as trust beneficiaries when there is a dispute over the use or disposition of church property. *Hooker v. Edes Home, supra,* at 612; *YMCA v. Covington, supra,* 484 A.2d at 591.

## III

■ Our next step is to determine whether the plaintiffs named in the amended complaint were bona fide members of the congregation.[5] The trial court found that the plaintiffs were not "members in good standing of Mount Jezreel Baptist Church at the time when they filed this

---

4. In *Cabaniss v. Cabaniss,* 464 A.2d 87, 91 (D.C. 1983), the elements of a trust are identified as "(1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary." [Citations omitted.]

5. Two of the thirteen named plaintiffs, Earnest Green and Kershaw Green, are now deceased; consequently, we are concerned with the standing of only eleven persons.

cause of action," and that they therefore lacked standing to sue the trustees and the pastor. While it may or may not be true that some of the named plaintiffs lack standing, the trial court's determination that none of them had standing was clearly erroneous. This is particularly important because we have held that when several plaintiffs are named, all must lack standing before a dismissal on standing grounds may be upheld. *See Hooker v. Edes Home, supra,* at 617. Because we conclude that the trial court's factual findings regarding the plaintiffs' standing were, at least in part, plainly wrong and without evidentiary support, *see* D.C.Code § 17–305(a) (1989), we reverse the dismissal of their complaint and remand this case for further proceedings.

### A. *Truehart, Gilliam, Emerson, and Kirksey*

■ Of the eleven surviving plaintiffs, four were not mentioned at all by the trial court in its order dismissing the complaint: Ruth Truehart, Nannie Gilliam, Jane Emerson, and Estelle Kirksey. According to an affidavit by one of the appellees, Reverend Trammell, dated October 19, 1984 (three weeks *after* the amended complaint was lodged with the court, along with a motion for leave to file it), these four—identified by name—were "considered members in good standing" of the church.[6] Furthermore, counsel for appellees filed in October 1984 a "Statement of Genuine Facts to Which There Is No Dispute," pursuant to Super.Ct.Civ.R. 12–I(k), to accompany a motion for summary judgment. That statement said that "a search of the Church membership roll and financial records reveals that purported plaintiffs (amended complaint) Ruth Truehart, Nannie Gilliam, Jane Emerson, and Estelle Kirksey are in fact and, indeed, members of good standing of the Mount Jezreel Baptist Church."[7] Truehart herself said in an affidavit that she had been a member of the church since 1950 and a deaconess for more than twenty years, and Gilliam said in an affidavit that she had joined the church in 1959 and "attended church regularly since that time." There appears to be no evidence at all that these four plaintiffs were not members of the church; consequently, they have standing to bring this suit, and the court's dismissal of the complaint as to them must be reversed.

### B. *Harvey and Herrod*

■ Jacqueline Harvey and Marcellus Herrod, unlike the four persons discussed above in part A, are listed among the named plaintiffs in the first numbered paragraph of the trial court's order. In dismissing the action as to them, however, the court ignored the only relevant evidence of their status as church members. Robert Haigler, the chairman of the

---

**6.** Appellees appear to have made an attempt to exclude Ruth Truehart and Nannie Gilliam from the congregation after Reverend Trammell made the statement we have quoted from his affidavit. On November 11, 1986, Reverend Trammell sent letters to Truehart and Gilliam stating that their membership in the church had been withdrawn in December 1984. In his letter to Truehart, Reverend Trammell stated:

> The Church voted in its regularly scheduled business meeting, in December, 1984, that any person involved in a "Lawsuit," against the Church, would automatically have the hand of fellowship withdrawn.
>
> In that you have admitted that you are a member in the group called "Christians Without A Home" and a part of the lawsuit filed against the Church ... [y]ou have forfeited your right to remain a Member of the Deaconess[es] and of the Church.

If nothing else, this letter is an admission that Truehart was a member of the church when the motion for leave to amend the complaint was filed.

**7.** A later "Statement of Material Facts in Dispute," filed by appellees in 1988 in opposition to plaintiffs' motion for summary judgment, asserts in paragraph 2 that four other plaintiffs (those discussed in part C, *infra*) are not members of the church, but adds, "Only Nannie Gilliam and Ruth Truehart are members of Mt. Jezreel." This statement does not mention Jane Emerson or Estelle Kirksey. However, paragraph 5 of plaintiffs' "Statement of Material Facts Which Are Not in Dispute," to which appellees' paragraph 2 was a response, asserted that Emerson, Kirksey, Marcellus Herrod, and Kershaw Green "were shown to be members of the church by documentary evidence." This assertion was not contradicted by appellees, and thus it may be "assume[d]" to be "admitted ... without controversy...." Super.Ct.Civ.R. 12–I (k).

church's board of trustees, testified at a hearing on September 14, 1988, that Jacqueline Harvey "is presently a member. The right hand of fellowship was not withdrawn from her." A few pages later in the transcript, Haigler acknowledged that the presence of Marcellus Herrod's name on a list of 1982 contributors showed that Herrod was also a church member. Mr. Haigler's testimony thus shows affirmatively that Harvey and Herrod were members of the church. There being no evidence to the contrary,[8] we hold that the dismissal of the complaint as to Harvey and Herrod is also erroneous and must be reversed.

### C. Emma Anderson, Pattie Anderson, Mildred Colbert, and Marion Stroud

The trial judge found that the "Right Hand of Fellowship" had been withdrawn "from these plaintiffs." This finding apparently refers to a church disciplinary action in February 1979 whereby four members of the congregation—Emma Anderson, Pattie Anderson, Mildred Colbert, and Marion Stroud—were dismissed.[9] It is inconsistent, however, with an earlier finding of the same trial judge, dated June 3, 1986, which states:

> The Court further finds that each of the following occurrences constitutes a badge of fraud:
>
> \* \* \* \* \* \*
>
> (h) Defendants' attempts to expel members and bar them from entering upon corporate property for any purpose, allegedly in violation of the rules or discipline of the Church, when such members express disagreement with defendants' management practices and procedures.... [10]

Because the court found in 1986 that the 1979 expulsion of these four plaintiffs was fraudulent, the later determination that these four plaintiffs lacked standing is, at best, questionable. We need not decide

whether the prior ruling constituted the law of the case, as appellants argue. *See Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1196–1197 (D.C.1984). We deem it sufficient to note the inconsistent findings and remand the case with directions to resolve the inconsistency.

### D. Jennifer Colbert

As to this one remaining plaintiff, the record is murky. The trial court, in listing the plaintiffs by name in its order, referred to one of them as "Jennifer Kershaw Green." This is apparently an amalgam of two names, Jennifer Colbert and Kershaw Green. Mr. Green is now deceased, but as far as we know, Jennifer Colbert is very much alive. Given this confusion in the court's order, resulting in a misidentification of one of the plaintiffs, we remand the case with directions to clarify the membership status of Jennifer Colbert.

### IV

Of the eleven named plaintiffs who are still alive, we are satisfied that at least six were shown to have standing to bring this suit. Reverend Trammell, one of the appellees, admitted in an affidavit that Ruth Truehart, Nannie Gilliam, Jane Emerson, and Estelle Kirksey were church members in good standing, and appellees admitted on the record that Harvey and Herrod were also church members. Furthermore, the court's conclusion that the "right hand of fellowship" had been "withdrawn" from Emma Anderson, Pattie Anderson, Mildred Colbert, and Marion Stroud cannot be reconciled with its earlier finding that the proposed expulsion of these four women "constitute[d] a badge of fraud." Finally, the membership status of Jennifer Colbert needs to be resolved.

The order dismissing the complaint is therefore reversed, and this case is re-

---

**8.** As to Herrod, see note 7, *supra.*

**9.** The first three were the only named plaintiffs in the original complaint; all four were named in the amended complaint.

**10.** This finding was made in support of an order appointing a receiver of the funds and property

of the church *pendente lite.* That order was summarily affirmed by this court. *Mount Jezreel Baptist Church Board of Trustees v. Thompson*, No. 86–846, decided May 17, 1988 (unpublished).

manded to the trial court for further proceedings.

*Reversed and remanded.*