Charles E. WILLIAMS, et al., Appellants,

v.

BOARD OF TRUSTEES OF MOUNT JEZREEL BAPTIST CHURCH, et al., Appellees.

Nos. 89–422, 89–577.

District of Columbia Court of Appeals.

Argued Feb. 13, 1991.
Decided April 18, 1991.

902

Charles E. Williams, pro se.

Darrel S. Parker, with whom Dovey J. Roundtree was on the brief, Washington, D.C., for appellees.

Before FERREN, BELSON and TERRY, Associate Judges.

FERREN, Associate Judge:

On March 24, 1989, after several conferences with the parties, a Masters' Report, and an evidentiary hearing, the trial court dismissed appellants' suit—filed in 1982—against the Board of Trustees and Pastor of Mount Jezreel Baptist Church to prevent the sale of church property. The court ruled that appellants lacked standing to sue because they had been validly expelled from church membership. The court also imposed Rule 11 sanctions against appellant-attorney Charles E. Williams for filing a "spurious claim." Appellants—Mr. Williams and his wife, Lorraine A. Williams—contend the trial court erred: (1) in concluding that the doctrine of claim preclusion (*res judicata*) barred Charles Williams from asserting his standing to sue; (2) in failing to apply the law-of-the-case doctrine to sustain Charles Williams' standing to sue, regardless of any claim preclusion bar; (3) in denying the Williamses' alternative contention that participation in the church's "corporate body," if not in the church's "membership," entitled them

as "trust beneficiaries" to sue the Board of Trustees for disposing of church property in a manner contrary to the purposes of the trust; and (4) in imposing an unjustifiable Rule 11 sanction.[1] Because the trial court's findings of fact and conclusions of law that the Williamses lacked standing are sustainable on this record, we affirm the order dismissing the lawsuit.[2] Because we are unable to discern from the record how the trial court exercised its discretion in imposing Rule 11 sanctions, however, we remand the case for further findings (after a hearing, or not, in the court's discretion) as to whether sanctions are warranted and, if so, in what amount and how calculated.

## I.

On January 20, 1982, the Williamses filed suit in Superior Court seeking a declaratory judgment that D.C.Code §§ 29–901 to –916 (1981) and the charter of the Mount Jezreel Baptist Church precluded the pastor and the board of trustees from selling the church's historic sanctuary building at Fifth and E Streets, S.E., without a vote of the members to amend the church's charter.

In their amended complaint filed February 27, 1984, appellants based their standing to sue on the fact that "[e]ach is an attendant and regular contributor and thus a member of the corporate body of the Mt. Jezreel Baptist Church." The amended complaint said:

> 4. Under the rules or discipline of the Mt. Jezreel Baptist Church, as well as [D.C.Code §§ 29–901 to –916 (1981)], the congregation consists of two official bodies, *viz.*, the *church* (ecclesia) or communing fellowship and the *society* or corporate body. The pastor and deacons administer the ecclesiastical affairs and the defendant board of trustees is authorized by the law to manage the corporate estate "in accordance with the rules or discipline governing the church or denomination to which such society or congregation may belong ... D.C.Code § 29–904."[3]
>
> 8. Hiscox, THE NEW DIRECTORY FOR BAPTIST CHURCHES and ROBERT'S RULES OF ORDER form the basis of the rules or discipline of the Mt. Jezreel Baptist Church....
>
> 9. Hiscox states, at page 117, that the congregation or "corporate body is a *society* composed of all attendants who are regular contributors whether members of the Church or not"....
>
> WHEREFORE, the plaintiffs demand that the Court adjudge:
>
> (1) That plaintiffs are members of the corporate body of the Mt. Jezreel Baptist Church and thus have standing to maintain this suit....

(emphasis in original). In the amended complaint, however, the Williamses did not advert to their earlier expulsions from church membership—the withdrawal of the "right hand of fellowship"—which in Charles Williams' case had been accompanied by six years of litigation in federal

---

**1.** The Williamses also argue that appellees "waived" or "admitted" certain claims in their answer to the amended complaint. These arguments have no merit. Super.Ct.Civ.R. 15(b) permits amendment of pleadings to conform to the evidence "even after judgment; but failure so to amend does not affect the result of the trial on these issues." *Id.* Rule 15 was drafted to "ensure that litigation be decided upon the merits rather than upon technical pleading rules." *International Tours & Travel, Inc. v. Khalil,* 491 A.2d 1149, 1152 (D.C.1985). We therefore look to the trial record, as well as to the trial court's rulings, not only to the pleadings.

**2.** The Williamses argue, in addition, that the trial court erred (1) in approving compensation for the receiver appointed by the court in 1986 to oversee church assets and (2) in terminating the receiver without a hearing and a full accounting. Because we conclude that the Williamses lacked standing to bring this suit, we do not reach these claims.

**3.** D.C.Code § 29–904 (1981) states that "rules and regulations may be adopted in relation to the management of the estate ... in accordance with the rules or discipline governing the church or denomination to which such society or congregation may belong, not inconsistent with the Constitution of the United States and the laws in force in the District." Because the record does not show whether the Mount Jezreel Baptist Church adopted rules or regulations for management or disposition of church property, we have no document to review for conformity with the rules or discipline of the Church.

court. Appellees—the board of trustees and the pastor—answered by characterizing the amended complaint as "an attempt to relitigate matters previously litigated" and by charging appellants with "set[ting] themselves forth as 'corporate members' of the church, without setting forth any criteria or classification of such membership." [4]

When eight status and settlement conferences failed to produce an agreement, the trial judge appointed two Special Masters on November 15, 1985, to determine (among other things) whether the Williamses had standing to conduct their lawsuit and whether they had been "expelled from membership in accordance with the rules and discipline of the Mt. Jezreel Baptist Church." The Masters' report of February 8, 1988 concluded that both Williamses lacked standing because each had been validly expelled from church membership. [5] The Masters found that the Williamses' regular attendance and financial contributions—which they claimed made them "corporate" members—were not sufficient to confer standing to sue. Appellants objected to the report, claiming their expulsions from the church had been fraudulent. Charles Williams specifically denied the report's finding that he had agreed to be bound by the 1976 decision of the special panel of Baptist ministers which had resolved the membership issue against him as part of the settlement of his federal court lawsuit. See *supra* note 5. Appellees moved to dismiss the amended com-

plaint. The Williamses opposed the motion, restating their claim to corporate memberships and challenging the church to produce evidence that they had been expelled "from the corporate body."

After an evidentiary hearing involving several witnesses, including a minister appointed by the federal district court to the 1976 panel, see *supra* note 5, and the church secretary who took the minutes of the 1979 church conference which expelled Lorraine Williams, the trial court granted appellees' motion and dismissed the amended complaint with prejudice. The court found:

1. That Charles E. Williams an attorney, is the same Charles E. Williams named plaintiff in Civil Action No. 3124–70, in the United States District Court of the District of Columbia.

2. That this suit was brought to challenge the action of the Mt. Jezreel Baptist Church in withdrawing the Right Hand of Fellowship from Charles E. Williams....

4. That following the remand of this case, both parties did consent and endorse an Order, wherein a panel of five Baptist Ministers were designated to review the action of the Church in withdrawing the Right Hand of Fellowship from Charles E. Williams, plaintiff....

10. That this plaintiff, a seasoned lawyer, knew or should have known the history of this membership dispute and in

**4.** Shortly after the Williamses filed their amended complaint, a group calling themselves "Mount Jezreel Christians Without a Home" filed suit against the Church's Board of Trustees and pastor alleging the Board and pastor had breached their fiduciary duty by threatening to close the doors of the historic church building. In view of the common issues of fact and law, the two cases were consolidated on November 6, 1985. The trial court, however, disposed of each case by separate order. Consequently, each case has been the subject of a separate appeal to this court. *See Mount Jezreel Christians Without a Home v. Board of Trustees of Mount Jezreel Baptist Church,* 582 A.2d 237 (D.C. 1990).

**5.** The Masters' Report carefully documented the 1970 civil litigation in federal court, No. 3124–70, which had as its core issue the validity of

Charles Williams' 1967 expulsion from the Mount Jezreel Baptist Church. See *infra* note 7. After six years of litigation, the case was dismissed with prejudice on March 15, 1976, after Charles Williams signed a praecipe agreeing to be bound by the decision of a special panel of five Baptist ministers. The court submitted to the panel the question: "Whether Charles E. Williams should be reinstated to full membership in the Mt. Jezreel Baptist Church, Washington, D.C." The court's order stated "the panel's decision will be final and binding upon all parties without right of appeal." That panel voted unanimously not to reinstate Charles Williams to full membership in the Mount Jezreel Baptist Church.

The Masters' Report also concluded that Lorraine Williams had been validly expelled from Mount Jezreel Baptist Church at a church conference in 1979.

particular that he signed and consented to be bound by the recommendations of the Panel of Ministers, before whom he appeared and gave testimony. That he had signed a Praecipe dismissing the case No. 3124–70 wherein the issue centered about his membership status.

The court also found that the "Right Hand of Fellowship" had been withdrawn from Lorraine Williams by a majority vote of approximately 100 members at a regularly called church conference held on February 23, 1979. The court noted that Lorraine Williams had been present and made no comment or objection at the conference and that she had taken no appeal from that action.

> The court concluded as a matter of law: 2. That the Court having heard the testimony, reviewed the documentary evidence, in particular the case of C.A. No. 3124–70, ... and the Report and Recommendations of the Special Masters ... concludes that the action of the Mt. Jezreel Baptist Church in withdrawing the Right Hand of Fellowship from both plaintiffs', herein, was proper and valid. 3. That as to Charles E. Williams, the prior determination of his membership in Mt. Jezreel Baptist Church is precluded by the determinations, to which he consented in the United States District Court for the District of Columbia. [4]. That these plaintiffs not being members of Mt. Jezreel Baptist Church at the time of the filing of this suit, lack standing to maintain this cause of action.

### II.

■ Under the doctrine of claim preclusion (*res judicata*), a valid final judgment on the merits absolutely bars the same parties from relitigating the same claim in a subsequent proceeding. *See Washington Medical Center, Inc. v. Holle,* 573 A.2d 1269, 1280–81 (D.C.1990); *Henderson v. Snider Bros., Inc.,* 439 A.2d

481, 485 (D.C.1981) (en banc). A final judgment on the merits "embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which might have been raised in the prior action." *Stutsman v. Kaiser Found. Health Plan,* 546 A.2d 367, 370 (D.C.1988). This doctrine also applies to judgments "entered by consent, compromise or agreement of the parties." *Universal C.I.T. Credit Corp. v. Gogos,* 184 A.2d 197, 198 (D.C.1962).

■ Charles Williams challenges the validity and finality of the federal court judgment which resolved against him his claim of membership in the Mount Jezreel Baptist Church.[6] See *supra* note 5. His effort here must fail. Any attack on that judgment had to be raised in a direct appeal. None was filed, of course, because Williams agreed to settle the litigation by consenting to be bound by the panel of ministers' decision, and he waived his right of appeal. See *supra* note 5. Williams cannot change his mind now.

### III.

■ Charles Williams next argues that although *res judicata* might otherwise preclude his claim to standing, an earlier trial court ruling in this case which in effect granted him standing has become the law of the case. Accordingly, he says, for purposes of this suit he is a member of the church.

On June 3, 1986, the trial court appointed a temporary receiver to oversee church assets based on a showing by the Williamses and the *Christians Without a Home* plaintiffs, see *supra* note 4, that Mount Jezreel Baptist Church was insolvent and probably the victim of fraudulent conduct. In its findings of fact at that time, the trial court stated:

> 20. The Court finds that defendants [the Board of Trustees and pastor of Mt.

---

**6.** The federal court order and praecipe dismissing the case with prejudice were clearly a judgment on the merits. Fed.R.Civ.P. 41(b) provides: "Unless the Court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

Jezreel Baptist Church] caused the congregation to vote to withdraw the membership from plaintiff Charles E. Williams, allegedly in violation of the stipulation filed in Civil Action No. 3346–66, United States District Court for the District of Columbia, on February 27, 1967[.][7]

On appeal, this court summarily approved appointment of the receiver. Appellant now argues that this factual finding—that membership was fraudulently withdrawn from Charles Williams—became the law of the case and thus barred the trial court from reconsidering and rejecting Williams' standing based on church membership.

■ The law of the case doctrine "bars a trial court from reconsidering the same question of law that was submitted to and adjudicated by another court of coordinate jurisdiction." *Weinberg v. Johnson*, 518 A.2d 985, 987 (D.C.1986). "This serves the judicial system's need to dispose of cases efficiently by discouraging 'judge-shopping' and multiple attempts to prevail on a single question." *Tompkins v. Washington Hospital Center*, 433 A.2d 1093, 1098 (D.C.1981) (quoting *Kritsidimas v. Sheskin*, 411 A.2d 370, 371 (D.C.1980)). We have never dealt with the question whether law-of-the-case doctrine applies as clearly to a case in which a single judge has presided over multiple stages of the same litigation as it does to a case in which several judges have ruled. Obviously, the judge-shopping concern is inapplicable to the single judge situation, but law-of-the-case doctrine still has force in that situation because, irrespective of how many judges have participated, the "efficient disposition of the case demands that each stage of the litigation build on the last, and not afford an opportunity to reargue every previous ruling." 1B MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (1988).

In this case, where only one judge has ruled, we need not resolve the single judge/multiple judge issue because, in any event, the law-of-the-case doctrine only applies if the first ruling is "sufficiently final" and is not "clearly erroneous in light of newly presented facts or a change in substantive law." *Weinberg*, 518 A.2d at 987 (citations and internal quotation marks omitted); *see Schroeder v. Weinstein*, 585 A.2d 1382, 1383 (D.C.1991). In this case, the issue of Charles Williams' membership was not finalized by interim trial court findings. Rather, the trial court clearly had reserved final judgment on Williams' standing when, only a few months earlier in November 1985, it had appointed two Special Masters to issue findings regarding Williams' church membership. At the time of its June 1986 ruling, the trial court had not yet received the Masters' report.[8]

■ In any event, the law of the case doctrine does not apply when "newly presented facts" reveal that the prior ruling was clearly erroneous. *Weinberg*, 518

7. On May 1, 1966, the right hand of fellowship was extended to Charles Williams. Soon thereafter, on December 21, 1966, Williams filed suit in federal court (Civil Action No. 3346–66) challenging the election of church officers. That suit was dismissed with prejudice after the parties signed a stipulation agreement on February 27, 1967 which provided that "4. The institution of this suit shall not constitute grounds for disciplinary action against any members of the Mt. Jezreel Baptist Church." However, on March 12, 1967, the congregation voted to withdraw fellowship from Charles Williams. This vote formed the basis of Charles Williams' 1970 federal suit (Civil Action No. 3124–70). See *supra* note 5.

8. In his Supplemental Memorandum of Points, filed post-argument on February 19, 1991, appellant contends that by 1986 the trial court had received a report from another set of Masters appointed in 1983. This report, according to appellant, concluded that the Williamses had standing to maintain this suit based on a review of the prior federal litigation. Williams, however, failed to supply us with a copy of this report or with any transcripts from which we can determine the accuracy of his statement. We therefore cannot consider his argument. "Unless the record that [the appellant] brings before the court of appeals affirmatively shows the occurrence of the matters upon which he relies for relief, he may not urge those matters on appeal." 9 J. MOORE, B. WARD & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 210.05[1], at 10–23 (2d ed. 1987); *see Jonathan Woodner Co. v. Adams*, 534 A.2d 292, 294 & n. 2 (D.C.1987) ("Appellant bears the burden of perfecting the appellate record and may not shift that responsibility to this court."); D.C.App.R. 10(a)(1).

A.2d at 987. Thus, the doctrine "does not preclude [a court from] correct[ing] an error." 1B MOORE'S FEDERAL PRACTICE at ¶ 0.404[1]. Clearly, the trial court had the power to revise its finding of fraudulent membership withdrawal once the Masters' Report and an evidentiary hearing set forth—for the first time—the facts of the prior, protracted federal court litigation. These facts suggested not only that the trial court's earlier findings were "clearly erroneous in light of newly presented facts," *Weinberg*, 518 A.2d at 987—*i.e.,* Williams was not defrauded of his membership in violation of a court stipulation; rather, he agreed to be bound by the decision of a panel of ministers—but also that the trial court's earlier findings of fraud were legally barred by the doctrine of *res judicata.*

## IV.

■ As an alternative ground for establishing their standing, both Williamses argue that they remained members of the church's corporate body, despite their expulsion from church membership.[9] Several months ago, this court answered the question whether church members may file suit against the board of trustees of their church on the theory that members are "trust beneficiaries." *See Mount Jezreel Christians Without a Home v. Board of Trustees of Mount Jezreel Baptist Church*, 582 A.2d 237, 239 (D.C.1990); *supra* note 4. We held that "as a general principle, bona fide members of a church have standing to bring suit as trust beneficiaries when there is a dispute over the use or disposition of church property." *Id.* In that case, we concluded that several of the appellants were bona fide members be-cause the church membership roll and financial records revealed that they were members in good standing and that the chairman of the church's board of trustees testified the "right hand of fellowship" had not been withdrawn from those appellants. *Id.* at 240–41.

In this case, the Williamses ask us to extend the definition of "bona fide member" to include persons who are not listed in the church's membership roll or financial records, and who in fact have been expelled from "the Right Hand of Fellowship," but who regularly attend the church and give financial contributions. According to the Williamses, these persons are properly considered to be "corporate members." The Williamses cite E. HISCOX, PRINCIPLES AND PRACTICES FOR BAPTIST CHURCHES (1985) to support their argument that the congregation is composed of all attendants who are regular contributors (corporate members), regardless of whether the right hand of fellowship has been extended to them (church members).

■ The First Amendment forbids a civil court from becoming "entangled in matters of a highly religious nature, issues at the core of internal church discipline, faith and church organization." *United Methodist Church v. White*, 571 A.2d 790, 795 (D.C. 1990). On the other hand, "in limited circumstances ... the church is not above the law," *id.,* and the courts accordingly apply "neutral principles of law," such as rules of statutory construction, to resolve church property disputes by reference to the applicable civil statutes. *See Jones v. Wolf,* 443 U.S. 595, 600, 99 S.Ct. 3020, 3023, 61 L.Ed.2d 775 (1979). We turn to that inquiry.[10]

9. Generally, expelled members "whose names have been expunged from the church membership roll by the valid action of the church, cannot stand for and represent members of the church in an action to prevent the diversion of church property from its lawful uses." 66 AM. JUR.2D *Religious Societies* § 12 (1973); *see Stewart v. Jarriel,* 206 Ga. 855, 856, 59 S.E.2d 368, 370 (1950).

10. We emphasize that this is not a case where the Williamses were expelled from membership to foreclose their bringing this lawsuit; their expulsions occurred many years before they filed their first complaint. Nor do we review whether the Williamses' expulsions conformed with the rules and discipline of the church, or whether their expulsions were tainted by fraud or collusion. The validity of Charles Williams' expulsion was settled in federal court. See *supra* Part II. Lorraine Williams' expulsion, see *supra* note 5, is not questioned in this appeal. Accordingly, we need not decide the extent to which the First Amendment permits a civil court to adjudicate the propriety of a dissident

■ Generally, the membership of a religious society is determined "by reference to the statutes governing such bodies" and "the rules, constitution, or by-laws of the society." 76 C.J.S. *Religious Societies* § 11 (1952). In this jurisdiction, the incorporation of religious societies is governed by D.C.Code §§ 29–901 to –916 (1981). We find nothing in the Code that confers legal rights on two subsets of church membership. The Code refers only to one membership and to the board of trustees, and it speaks only of the rights of "members of [the] society or congregation," *id.* § 29–901, not the rights of the "corporate" body or "attendants who are regular contributors." Nor can we find support for the concept of "corporate" as distinct from "society" or "congregation" membership in the edition of the D.C.Code that governed the original incorporation of the Church in 1883. *See* Rev.Stat.D.C. § 533–41 (1875).

The Williamses have proffered no church articles of incorporation, by-laws, or rules and regulations adopted pursuant to the D.C.Code, see *supra* note 3, that incorporate church rules or discipline in a way that make them cognizable under civil law. In

view of governing caselaw, therefore, *see Jones*, 443 U.S. 595, 99 S.Ct. 3020; *White*, 571 A.2d 790, we cannot properly go outside the constraints of local statutes to find and apply definitions of membership in the Baptist Church—for example, definitions found in HISCOX—that would involve us in construing complex doctrinal glosses on the concept of church membership.[11]

■ Finally, given traditional notions of standing to sue, we do not believe regular church attendance and financial contributions comprise a sufficient basis for granting an individual a "special interest" in the enforcement of a charitable trust. *See Hooker v. Edes Home*, 579 A.2d 608, 611 (D.C.1990). Under such a definition, the class of beneficiaries would be uncertain and limitless. *Id.* at 614. The problem of subjecting the official trustees to recurring vexatious litigation would be exacerbated. Without some additional indicia of "special interest"—such as enrollment on the membership list as we found in *Christians Without a Home*—we decline to extend standing to a highly generalized "corporate membership" distinguished only by its at-

---

member's expulsion from a congregational church. *Compare Nunn v. Black*, 506 F.Supp. 444 (W.D.Va.), *aff'd*, 661 F.2d 925 (4th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982) (First Amendment prohibits judicial resolution of whether church members' expulsion was in accordance with church expulsion procedures) *with First Baptist Church of Glen Este v. Ohio*, 591 F.Supp. 676, 683 (S.D. Ohio 1983) (internal church disciplinary proceedings tainted by fraud or collusion may be subject of civil court inquiry). *See generally* Ellman, *Driven from the Tribunal: Judicial Resolution of Internal Church Disputes*, 69 CALIF.L. REV. 1380 (1981).

**11.** Appellees point out that, even if this court were to try to interpret and apply HISCOX, we would not find that the language cited by appellants provides support for their case. Appellants rely on the following passage:

The laws for the incorporation of religious societies differ in the different States. In some the Church itself can become an incorporated body, and thus control and administer its temporal affairs as it does the spiritual, without interference by any persons not Church members. This is right, and, according to the independent theory of Baptist Church government, they ought everywhere

to be able to do this. In other States the corporate body is a *society* composed of all attendants who are regular contributors, whether members of the Church or not. This admits persons not Christians to participation in the management of Church affairs. Though usually no harm arises, yet harm is always liable to arise and the theory is wrong. E. HISCOX, PRINCIPLES AND PRACTICES FOR BAPTIST CHURCHES 117 n. 1 (1985) (emphasis in original). Appellees stress that, rather than supporting the concept of corporate membership based solely on attendance and financial contribution, HISCOX disapproves of the concept even though some state laws apparently embrace it. *See* Annotation, *Suspension or expulsion from church or religious society and the remedies therefor*, 20 A.L.R.2d 421, 433–35 (1951) (discussing implications of state incorporation laws which vest corporate powers in officers who need not be church members.)

Furthermore, appellees point out that, although we need not adopt the 1988 Masters' Report's reliance on HISCOX, it is interesting to note the Masters found that attendance and financial contributions did not confer standing to sue because, according to another section of HISCOX, "[p]ersons not members enjoy the privilege of worship with the church, *but can claim no corporate rights.*" HISCOX at 79 n. 14 (emphasis in report).

tendance and financial contributions. The Williamses' final argument for standing accordingly fails.

## V.

▇ Appellants argue the Rule 11 sanction must be vacated for three reasons: the trial court failed to articulate how the Williamses' claim was "spurious," failed to hold a hearing, and set the amount of the sanction unreasonably high. Under Super. Ct.Civ.R. 11, the signature of an attorney on every pleading, motion, or other paper constitutes a certification that

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this Rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

▇ A trial court decision to impose a Rule 11 sanction is a two-part process.

First, the court must decide whether a Rule 11 violation occurred. If it did, the court must impose a sanction. *See Montgomery v. Jimmy's Tire & Auto Center, Inc.,* 566 A.2d 1025, 1028–29 (D.C.1989). In deciding whether Rule 11 has been violated, the trial court focuses only on whether "reasonable pre-filing inquiry would have disclosed that the pleading, motion, or paper was not well grounded in fact, was not warranted by existing law, or was interposed for an improper purpose." *Kleiman v. Aetna Casualty & Sur. Co.,* 581 A.2d 1263, 1266 (D.C. 1990) (citations omitted). Rule 11 does not apply to oral representations or to the actions of counsel before and during trial. *Id.*

▇ A trial court's decision as to whether a pleading "is well grounded in fact," is not "warranted by existing law or a good-faith argument" for changing the law, or is interposed for an "improper purpose" is subject to review for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).[12]

In this case, the trial court issued a one-sentence order, imposing a Rule 11 sanction on appellant Charles Williams for filing a "spurious claim with full knowledge of the total history of membership." The order does not make clear whether the court imposed the sanction because Williams, as attorney, did not undertake the proper pre-filing factual inquiry, had an improper purpose, or made an unwarranted legal argument.[13] We are aware that our

---

**12.** Because the Superior Court rule is virtually identical to Fed.R.Civ.P. 11, we consider the federal cases on Rule 11 as "persuasive authority." *Stansel v. American Sec. Bank,* 547 A.2d 990 n. 8 (D.C.1988) (citation omitted), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989). In *Montgomery,* 566 A.2d at 1029, we noted that in *Stansel* we had adopted the Rule 11 analysis of the United States Court of Appeals for the District of Columbia Circuit in *Westmoreland v. CBS, Inc.,* 248 U.S.App.D.C. 255, 261–62, 770 F.2d 1168, 1174–5 (1985). We further noted in *Montgomery,* 566 A.2d at 1029, that the *Westmoreland* court, and thus this court, followed the approach of the federal circuits that use abuse-of-discretion standard to review a decision whether a pleading "is well grounded in fact" or reflects an "improper pur-

pose," but applied de novo review to decide whether the pleading is "warranted by existing law or a good-faith argument" for changing the law. Because of *Cooter & Gell,* calling for abuse-of-discretion review for all three Rule 11 criteria, the law of the D.C. Circuit developed in *Westmoreland* has been modified. For consistency in the law of both court systems in this jurisdiction, we hereby change our *Montgomery/Westmoreland* interpretation of Super.Ct. Civ.R. 11 to the uniform abuse-of-discretion standard of review announced for the federal courts in *Cooter & Gell.*

**13.** "Spurious" is a word with various meanings and can be defined as "faulty in reasoning or conclusion" or as "of deceitful or fictitious nature or quality." WEBSTER'S THIRD NEW INTERNA-

caselaw defining the legal prerequisites for maintaining a suit against a charitable trust is complex and recently developed. *See Christians Without a Home*, 582 A.2d 237; *Hooker*, 579 A.2d 608. Moreover, the interplay between the property rights of minority factions in religious congregations and the First Amendment has troubled even the Supreme Court. *See Jones*, 443 U.S. at 597–602, 99 S.Ct. at 3022–25 ("The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively"); Note, *Church Property Dispute Resolution: An Expanded Role for Courts After* Jones v. Wolf?, 68 GEO.L.J. 1141 (1980). Charles Williams attempted to base one of his standing arguments on a novel theory of corporate membership—a theory we reject in this opinion but not a wholly unwarranted theory, given the sparse caselaw on this issue when the amended complaint was filed in 1984. Williams' arguments in his pleadings and motions were challenging, causing the trial court to call for two Special Masters' reports and resulting in the appointment of a temporary receiver to oversee church assets. On the record before us, we cannot conclude as a matter of law that Williams' standing argument did not propose a good faith extension of the law.

 On the other hand, even a legitimate legal argument can be premised on carelessly developed facts and advanced for an improper purpose. Rule 11 accordingly requires the court to balance the potential "chill" on innovative theories of law against the need to discourage frivolous or dilatory litigation which drives up the opposing party's expenses and otherwise causes prejudice. *See Cooter & Gell*, 110 S.Ct. at 2454; *Montgomery*, 566 A.2d at 1030; *In re Kunstler*, 914 F.2d 505, 524 (4th Cir.1990). Because the trial court's order imposing sanctions was ambiguous in its intent, see *supra* note 13, we must remand the case for further explanation of the Rule 11 order.

 Appellant argues that he is entitled to a hearing on Rule 11 sanctions. We cannot say as a matter of law that he is. "While Rule 11 procedures must comport with due process, a hearing is not required in every case." *Montgomery*, 566 A.2d at 1031. The Advisory Committee Note to Rule 11 has suggested that the type and severity of the sanction must influence the amount of process due. *See* Fed.R.Civ.P. 11, Advisory Committee Note, 97 F.R.D. 165, 201 (1983); *Kunstler*, 914 F.2d at 521–22. In this case, the judge who imposed Rule 11 sanctions participated in every aspect of these proceedings. Under these circumstances, the trial judge is uniquely in a position to decide whether a hearing is necessary; on remand, we leave that judgment to his discretion. *See* Advisory Committee Note, 97 F.R.D. at 201.

 Finally, we turn to the amount of the sanction: ten percent of appellees' costs and attorneys' fees. Rule 11 requires that the sanction be "appropriate" and that costs and attorneys' fees be "reasonable." We review for abuse of discretion. *See Montgomery*, 566 A.2d at 1029.

"[T]he central purpose of Rule 11 is to deter baseless filing ... and thus ... streamline the administration and procedure of the ... courts." *Cooter & Gell*, 110 S.Ct. at 2454. The amount of the sanction, therefore, should reflect this primary purpose—deterrence—although the courts have also said that, in fairness, the amount should be the least severe sanction adequate to serve that purpose. *See Kunstler*, 914 F.2d at 522–23; *White v. General Motors*, 908 F.2d 675, 683–84 (10th Cir. 1990).

 In imposing a monetary sanction, the trial court should expressly consider at least four factors, all of which serve to limit the amount assessed: (1) the reasonableness of the injured party's attorneys' fees, including that party's "duty to miti-

---

TIONAL DICTIONARY 2212 (1966). One definition would imply that Williams was incorrect on the law; the other would suggest he had an improp-

er purpose. We cannot tell from this record which meaning the trial court meant to convey.

gate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims," *Kunstler*, 914 F.2d at 523 (quoting *White*, 908 F.2d at 684); (2) the minimum amount that "will serve to adequately deter the undesirable behavior," *id.* at 524 (quoting *White*, 908 F.2d at 684–85); (3) the offending party's ability to pay, bearing in mind that sanctions should not be so large as to bankrupt the offending party, drive that party from the practice of law, or otherwise cause the offending party great financial distress, *see id.*, and (4) "the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *Id.* at 524–25.

In order to conduct its inquiry into these factors, the court should allow the offending party to supplement the record and to submit evidence of financial status, with the burden on that party to produce evidence of the impact of the sanction. *See id.* at 524; *White*, 908 F.2d at 685. And, if the amount of sanction is likely to be large, "the court should permit the sanctioned party to examine and contest the injured party's fee statements as an aid to the court's own independent analysis of the reasonableness of the claimed fees." *Kunstler*, 914 F.2d at 524.

Here, the trial court's imposition of a ten percent award against an individual *pro se* plaintiff based on appellees' costs and attorney fees over seven years of litigation is potentially harsh. The sanction apparently was not based on careful consideration of appellees' costs and fees after a review of documented expenditures, hours of attorney time, reasonableness of rates charged, and necessity of the work performed.[14] *See Montgomery*, 566 A.2d at 1030; *Williams v. Ray*, 563 A.2d 1077, 1080 (D.C. 1989). Nor did the court consider the minimum amount of a sanction necessary to deter future frivolous suits of the type

involved here or evaluate the Williamses' ability to pay. Absent specific findings of this sort, we cannot review the court's order for abuse of discretion. *See Montgomery*, 566 A.2d at 1030.

Accordingly, we affirm the order dismissing appellant's complaint for lack of standing, but we reverse and remand the Rule 11 order to the trial court for fuller explanation of whether Rule 11 sanctions are warranted. If sanctions are warranted, the trial court should refer to the papers signed by Williams that violated the rule, explain why the rule was violated, and demonstrate how the sanction is calculated giving consideration to the factors which determine the reasonableness of the fee. *See id.* at 1032.

*Affirmed in part; reversed in part and remanded.*

---

**14.** Rule 11 permits "an award only of those expenses directly caused by the [offending] fil-

ing." *Cooter & Gell*, 110 S.Ct. at 2461.