*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 17-PR-71, 17-PR-72, 17-PR-73, 17-PR-74, and 17-PR-75

IN RE DARNELL LEWIS, IN RE JEFFREY DIXON, IN RE CAROL FLETCHER, IN RE JAMES WALMSLEY, and IN RE MAURICE MARS,

RICHARD JASON TAPPAN, APPELLANT.

Appeals from the Superior Court
of the District of Columbia
(INT-169-97, IDD-78-11, INT-210-12, INT-95-15, and INT-103-16)

(Hon. Kaye K. Christian, Trial Judge)

(Submitted May 22, 2018                     Decided July 31, 2018)[*]

*Jouya Rastegar* was on the brief for appellant.

*John H. Clarke* was on the brief for appellee James Walmsley.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Acting Solicitor General at the time, and *Stacy L. Anderson*, Senior Assistant Attorney General, filed a memorandum in lieu of brief for the District of Columbia.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of the motion to publish filed jointly by appellant and appellee Walmsley. At the time the MOJ was issued, Judges Fisher and Thompson were Associate Judges; they now are Senior Judges. In considering the motion to publish, Senior Judge Ruiz replaced Senior Judge Nebeker, who is retired. The clerk is directed to issue the mandate forthwith.

Before FISHER and THOMPSON, *Associate Judges*, and NEBEKER, *Senior Judge*.

FISHER, *Associate Judge*: In these consolidated appeals, appellant Richard Jason Tappan, an attorney, challenges monetary sanctions that the Superior Court imposed upon him *sua sponte*. We vacate the underlying orders and remand the cases.

## I.      Background

Superior Court Administrative Orders 04-06, https://www.dccourts.gov/sites/default/files/2017-03/0406.pdf (last visited Jul. 24, 2018), and 13-15, 141 Daily Wash. L. Rptr. 2066, 2068 (D.C. Super. Ct. Sept. 25, 2013) (collectively, the "Administrative Orders") require legal guardians to certify to enumerated statements when petitioning for compensation. One of the required statements reads as follows: "[I]n cases in which I am a fiduciary, . . . I have filed all reports, verifications of notice, accounts and subsequent requirements due as of the date of this petition or request. . . ." By requiring guardians to so affirm, the Administrative Orders tacitly preclude them from petitioning for fees when one of the specified documents has come due but remains unfiled.

For a time, meeting this obligation posed a problem for appellant, as he had missed the initial, April 2016 deadline for filing accounts in two of his cases. However, as of June 6, 2016, the judges presiding over those cases had granted his motions for extensions of time, setting a new deadline of July 13.  After receiving those favorable orders, and before the new due date arrived, appellant submitted petitions for fees in five cases in which he had served as a guardian for an indigent individual.  Rather than using the precise language required by the Administrative Orders, though, appellant affirmed: "[I]n cases in which I am a fiduciary, . . . I have filed all reports, verifications of notice, accounts, and subsequent requirements due as of the date of this petition or request, *or I have filed a motion to enlarge time to file, or a petition to late file*. . . ." Although, we have italicized the text appellant added, he failed to do so; nor did he otherwise draw attention to his change.

The court noticed appellant's modifications, however.  In orders issued in response to each petition, the trial court posited that appellant had attested to "false" statements, expressed concern about his decision to alter the prescribed language, and required him to show cause why he should not face sanctions for his conduct.  At the show cause hearing, appellant voluntarily withdrew his petitions, even though the trial court had already dismissed them without prejudice in its

show cause orders.  Nonetheless, the court issued an order imposing sanctions—and, as it clarified in a subsequent order, did so under Super. Ct. Civ. R. 11.  Its penalty was to "***prohibit[]*** [appellant] ***from resubmitting a fee petition . . . for the time period covered***" in each of the five cases giving rise to these appeals.  (Emphasis in original.)  Because those petitions collectively sought $21,854.50 in fees, the court's sanction constituted a serious monetary penalty.  The court also admonished appellant not to make "further inaccurate or false certifications to the court."  After his motions for reconsideration were denied, appellant filed notices of appeal.

Before this court, appellant faces no opposition.  The government submitted a memorandum in lieu of a brief declaring that the "matter [is] between [appellant] and the Court."

## II.    Analysis

We "review[] for abuse of discretion both a trial court's determination that Rule 11 was violated and the amount of sanctions ordered."  *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper*, 935 A.2d 362, 377 (D.C. 2007) (quoting *Cunningham v. Bathon*, 719 A.2d 497, 499 (D.C. 1998)).  In applying this

standard, "[we] must determine whether the decision maker failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Brooks v. United States*, 993 A.2d 1090, 1093 (D.C. 2010) (first alteration in original) (quoting *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979)). Additionally, we cannot affirm if the court exercised its discretion "to an extent clearly unreasonable." *Johnson*, 398 A.2d at 363 (quoting *Bringhurst v. Harkins*, 122 A. 783, 787 (Del. 1923)).

## A.     Amount of Sanction Ordered

We conclude that the trial court imposed an excessive penalty and, because we view that error as its most significant one, we begin our analysis there. When determining what sanction to impose, trial courts

> should expressly consider at least four factors, all of which serve to limit the amount assessed: (1) the reasonableness of the injured party's attorneys' fees . . . ; (2) the minimum amount that will serve to adequately deter the undesirable behavior . . . ; (3) the offending party's ability to pay . . . [;] and (4) the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances.

*Williams v. Bd. of Tr. of Mount Jezreel Baptist Church*, 589 A.2d 901, 911-12 (D.C. 1991) (internal quotation marks and citations omitted). Although the first factor does not apply here (the court did not award attorney's fees to an opponent), the remaining ones do and the trial court did not adequately consider them.

Most notably, the trial court failed to assess whether the sanction it imposed exceeded "the minimum amount that will serve to adequately deter the undesirable behavior." Had it done so, it is unlikely it would have imposed the penalties it did—sanctions that barred appellant from seeking compensation for one year's worth of work in four cases, several months' worth of work in another, and, in total, deprived him of over $20,000 in income. Through these penalties, the court effectively dismissed all five fee petitions with prejudice, yet "[d]ismissal is an extreme sanction which should be granted only sparingly or in extraordinary circumstances," *District of Columbia v. Serafin*, 617 A.2d 516, 519 (D.C. 1992). It is a particularly questionable sanction here, given that during the show cause hearing, appellant demonstrated an intent to avoid similar conduct by withdrawing the petitions and "promis[ing] to abide by the letter and spirit of the law with regard to the Court's interpretation of the proper certifications."[1] The trial court

---

[1] By moving to withdraw his fee petitions, appellant did not intend to forgo compensation for his services. He soon filed motions "urg[ing] the court to
(continued…)

suggested that it inferred a contrary intent by referencing appellant's "represent[ation] that he had intended to use the added language in the certification as a template for all petitions moving forward." However, nothing in the transcripts provided on appeal indicates that appellant made any such representations at all.[2] On remand, the court may perhaps determine that these expressions of regret do not obviate the need to impose sanctions for purposes of deterrence. However, the penalty imposed here appears to exceed what is necessary to achieve that goal.

The trial court also neglected to discuss other factors that *Williams* required it to consider. It failed to weigh the magnitude of the sanction against the severity of the violation; assess whether appellant had a "history" of misconduct; and analyze appellant's ability to forgo over $20,000 in income. Nor did the court expressly analyze whether "malice or bad faith contributed to the violation." In

---

(…continued)
reconsider its order, and allow him to re-file his fee petitions with a compliant certificate." These motions were denied.

[2] It also is possible that the record on appeal does not contain full transcriptions of the proceedings that occurred in this case. For example, in each show cause hearing, appellant's lawyer sought to incorporate his client's "past testimony" into the proceeding. Similarly, in its orders, the trial court noted that it heard testimony from appellant. However, the transcripts provided on appeal do not contain any testimony from Mr. Tappan.

these ways, the court omitted relevant factors from its analysis and the penalty it imposed cannot stand. If, on remand, the court concludes that appellant contravened Rule 11 and that his conduct warrants sanctions, it must consider the amount of the penalty anew, relying on the factors specified in *Williams*.

## B.     Whether Appellant Violated Rule 11

The trial court concluded that appellant violated Rule 11 for two reasons, each of which we deem flawed. First, it found that appellant certified that, in each case in which he was a fiduciary, he had "filed all . . . accounts . . . due as of the date of this petition"—an attestation the court described as "false," because appellant had missed the original deadline for filing accounts in two of his cases. Yet, with one exception, none of appellant's fee petitions contained the certification Judge Christian ascribed to them.[3] Instead of affirming that language—which is identical to the text required by the Administrative Orders— appellant attested to having filed all accounts due "or [to having] filed a motion to enlarge time to file, or a petition to late file." This modified statement was accurate. Indeed, Judge Christian even observed that "[p]etitioner did not

---

[3] In his petition for fees in the Fletcher matter, appellant included two certifications. One affirmed the precise language required by the Administrative Orders; the other attested to the modified language used in the other fee requests.

misrepresent the fact that he had filed a motion for an extension of time [for filing the accounts] when he made his certification."

Furthermore, it appears that appellant's certifications would have been accurate even if he had used the language required by the Administrative Orders. As discussed previously, before petitioning for fees, appellant moved the court to allow him more time to file the tardy accounts and the court (acting through judges other than Judge Christian) granted his motions, postponing the deadlines to a date *after* he submitted his fee requests. Thus, at the time appellant filed his petitions, the two accounts were not "due," making the fact that he had yet to submit them irrelevant to his eligibility to obtain compensation.[4] Rejecting this conclusion, Judge Christian reasoned that appellant's successful motions did not "toll the delinquency" because the court failed to "have the late filing applied *nunc pro tunc* to the original due date" or take a similar action. This analysis strays from the plain text of the Administrative Orders. When appellant petitioned for fees, the due date set in response to his motion had yet to arrive. Consequently, the accounts were not "due as of the date of [his] petition[s]" and appellant did not

---

[4] The trial court noted that appellant filed the accounts on July 29, after the new deadline had passed. However, because that delinquency occurred after appellant petitioned for fees, it does not bear on whether the accounts were "due" on the date he filed his fee requests.

offend the Administrative Orders' implied prohibition on seeking fees when accounts that were due remained delinquent.

The court's second reason for sanctioning appellant was his decision to modify the certification statements required by the Administrative Orders. We, too, find this behavior disturbing, particularly because, as the court noted, appellant failed to put his changes in bold type or otherwise alert the court that he had made them. But without more, this conduct does not provide a basis for Rule 11 sanctions. To determine whether a lawyer or party ran afoul of Rule 11, a trial court "focuses only on whether reasonable pre-filing inquiry would have disclosed that the pleading, motion, or paper was not well grounded in fact, was not warranted by existing law, or was interposed for an improper purpose." *Kennedy v. District of Columbia*, 654 A.2d 847, 859 (D.C. 1994) (quoting *Williams*, 589 A.2d at 910). Modifying certification statements constitutes a different form of misconduct than presenting a false or frivolous legal or factual claim—the conduct Rule 11 proscribes. This distinction is particularly apparent here, given that appellant did not change the certification statements in ways that made them false.

That said, the record before us does not foreclose the possibility that appellant's conduct warranted sanctions. For example, if appellant's modifications

created a likelihood that the court could be misled or were filed for an improper purpose, they could, potentially, fall within Rule 11's ambit. Similarly, if appellant altered the statements in bad faith, then the court may have had grounds to impose a penalty under its inherent authority to sanction. *See In re Jumper*, 909 A.2d 173, 176 (D.C. 2006) (discussing court's inherent powers). We take no position on any of these possibilities save to note that the trial court failed to consider them expressly.

We remand to allow the trial court to review these and related issues. To the extent the trial court evaluates appellant's conduct under Rule 11, it must determine the proper standard to apply. In his motions to reconsider, appellant argued that a trial court may only impose sanctions *sua sponte* (as the court did here) when the misconduct is "akin to a contempt of court," a standard suggested by the Advisory Committee's notes to the federal version of Rule 11. Fed. R. Civ. P. 11(b) & (c) advisory committee's note to 1993 amendment. When Judge Christian denied the motion to reconsider, she did not address this issue—one that appears to be a matter of first impression in this jurisdiction. We defer to the trial court to consider this issue in the first instance if the matter turns out to be relevant to its disposition on remand.

### C.    Appellant's Other Arguments

In addition to arguing that the trial court abused its discretion, appellant raises three other contentions.  First, he asserts that once the court dismissed the fee petitions without prejudice—or, at the very least, when he voluntarily withdrew them—it lost authority to rule on the sanctions matter.  If valid, that contention would mean that the court also lacks authority to consider the issue on remand, making it pointless for us to send the case back. We have quoted the Supreme Court in observing that "the imposition of a Rule 11 sanction is not a judgment on the merits of an action. . . .  Such a determination may be made [even] after the principal suit has been terminated." *Hipps v. Cabrera*, 170 A.3d 199, 205 n.8 (D.C. 2017) (second alteration in original) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)).  Thus, we discern no procedural infirmity in remanding the sanctions determination even though the underlying fee petitions are no longer pending.

As for appellant's remaining two arguments, our disposition obviates the need to address them.  These contentions attack the nature of the court's sanctions: appellant asserts, first, that the court lacked authority to penalize him by denying his fee petitions with prejudice and, second, that the court failed to warn him of the

possibility of such a penalty, thereby offending due process. By reversing the court's sanction and remanding the case, our order allays any harm that resulted from these alleged errors. Consequently, we do not consider them.

### III. Conclusion

For the reasons stated, we vacate the Superior Court's orders prohibiting appellant from resubmitting fee petitions for the time periods at issue. The cases are remanded for further proceedings consistent with this decision.

*So ordered.*